Rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

————————————————

## CR-21-0109

————————————————

## Joseph Michael Wilson

### v.

## State of Alabama

## Appeal from Madison Circuit Court
## (CC-97-164.60)

On Application for Rehearing

COLE, Judge.

The opinion issued on June 28, 2024, is withdrawn, and the following is substituted therefor.

Joseph Michael Wilson, an inmate on Alabama's death row, appeals the Madison Circuit Court's judgment summarily dismissing his Rule 32, Ala. R. Crim. P., petition for postconviction relief.

Facts and Procedural History

"In September 1996, Michelle Hayden and Ashley Rutherford, who were engaged to be married, lived together in a room in the house in which Rutherford's aunt lived. On or about September 18, 1996, [Wilson], Nicholas Acklin, and Corey Johnson went to Rutherford's residence and acted like they wanted to buy some marijuana. After looking at the marijuana, the three men left. However, Johnson returned, asked to see the marijuana again, and then grabbed the marijuana and left. Shortly thereafter, Lamar Hemphill, who was visiting Rutherford, realized that his cellular telephone was missing. When he called the telephone's number, [Wilson] answered. Hemphill then filed a complaint with the sheriff's department, alleging that [Wilson] stole his cellular telephone. A few days later, [Wilson] discovered that a complaint had been filed against him.

"On September 25, 1996, Hayden, Hemphill, and Brian Carter were watching television in Hayden and Rutherford's room while Rutherford was at work. Michael Skirchak and Johnny Couch, who were on their way to pick up Michael Beaudette, stopped to visit them. Around 10 p.m., [Wilson], Acklin, and Johnson arrived, and [Wilson] started asking who had filed a warrant against him for taking a cellular telephone. Hemphill stated that he did not know anything about a warrant and that only a complaint had been filed. Johnson then started slapping Hemphill, Couch, Carter, and Skirchak around. Using a Jack Daniel's whiskey bottle, he hit Hemphill in the head and Carter in the mouth. He also

2

grabbed Couch by his hair, which was long, and repeatedly slammed his head into a dresser. At one point, Johnson held Couch up by his hair, and [Wilson] cut Couch's hair. [Wilson] also repeatedly 'stomped' Couch, who was lying on the floor. Sometime later, Beaudette arrived and was told to empty his pockets.

"[Wilson], Acklin, and Johnson were all armed with pistols. At one point, while Acklin and Johnson remained armed, [Wilson] laid his gun on a table and dared the others to grab it. He also held his gun to Skirchak's head and asked him about the warrant. During the evening, [Wilson] made some of the males take off their pants and give him their identification cards. He also made statements like 'Y'all don't know who you're f_____ with. Y'all are fake. We're real.' (R. 780), and 'I ain't even supposed to be here. I'm the leader of this crew. I'm not even supposed to be here. I'm supposed to be at home with my wife or girlfriend.' (R. 780-81.) Throughout the evening, [Wilson] repeatedly said, 'This is my crew.'

"Around 11:20 or 11:30 p.m., Rutherford came home from work. [Wilson], Acklin, and Johnson questioned him about the warrant and warned him not to lie to them. They made him take his pants off, and [Wilson] took two necklaces from him. [Wilson] yelled at Rutherford, slapped him, and spit in his face. He also made Hayden say 'My boyfriend [Rutherford] ain't s___.' Additionally, Acklin put a gun in Rutherford's mouth and made him gag.

"Throughout the evening, [Wilson] repeatedly made comments like, 'Let's buck them' and 'You don't f___ with Joey's crew.' Witnesses testified that 'buck' meant 'shoot' or 'kill.' One time, Hayden told [Wilson] to be quiet or he would wake up Rutherford's aunt. In response, [Wilson] said, 'Well, we can take care of her too.' (R. 1448.) As the violence escalated, Johnson tried to stop [Wilson] and Acklin, but they made fun of him. Finally, [Wilson] told Acklin that if Acklin

3

would shoot the first one, he would shoot the rest of them. Shortly after that comment, Acklin grabbed Rutherford and shot him in the back of the head. [Wilson] then started shooting. When the shooting started, Skirchak ran out of the house and sought help. After firing 19 times, [Wilson], Acklin, and Johnson left, and Rutherford and his aunt telephoned for help.

"Medical personnel and law enforcement officers arrived around midnight, and Rutherford immediately identified [Wilson] as the perpetrator. Around 12:15 a.m., officers apprehended [Wilson] and Johnson and found a revolver that had been used in the incident in their vehicle. Later, they found a Ruger P89, two Lorcin pistols, another revolver, and Beaudette's driver's license at Acklin's residence.

"After they arrested him, [Wilson] made a statement to Investigator Kevin Turner about his involvement in the offense. In that statement, [Wilson] admitted that he, Acklin, and Johnson went to Rutherford's residence about a dispute over a cellular telephone. He stated that he had a revolver and that Acklin and Johnson also had weapons. He admitted that they slapped some of the victims and that one thing led to another and the shooting started. When the shooting started, he said he ran to his vehicle, Acklin and Johnson followed him, and they all left. He initially told Turner he did not remember who did the shooting, but then said, '[T]hat's my crew y'all got locked up out there. I'm not going to turn and rat on them.' (R. 922.)

"At trial, one of [Wilson's] friends testified that [Wilson] telephoned him from jail after the offense, talked about the incident, and told him to 'finish the job,' which he took to mean to kill the surviving witnesses. One of [Wilson's] cell mates testified that [Wilson] had bragged about his involvement in the offense. He also testified that [Wilson] had made statements about having friends 'on the outside' who had

4

persuaded Hayden not to testify and who could 'take care of' witnesses in the cell mate's case.

> "Hemphill, Beaudette, Couch, Carter, Hayden, and Rutherford sustained gunshot wounds as a result of the incident. Hemphill, Beaudette, Couch, and Carter died as a result of the gunshot wounds they sustained, and Hayden and Rutherford were injured. Forensic testing revealed that Carter had been shot with a Ruger P89, and Skirchak, Hayden, and Rutherford testified that [Wilson] had been armed with a Ruger P89. During the penalty phase of the trial, [Wilson] admitted that he had been armed with a Ruger P89 and that he had shot Carter, but denied that he had shot anyone else."

Wilson v. State, 777 So. 2d 856, 874-76 (Ala. Crim. App. 1999).

In January 1997, Wilson was indicted for two counts of capital murder -- one count for killing Hemphill, Beaudette, Couch, and Carter "by one act or pursuant to one scheme or course of conduct," a violation of § 13A-5-40(a)(10), Ala. Code 1975, and one count for causing their deaths during the course of a first-degree burglary, a violation of § 13A-5-40(a)(4), Ala. Code 1975 -- and two counts of attempted murder for shooting Rutherford and Hayden, violations of §§ 13A-4-2 and 13A-6-2, Ala. Code 1975.

In late 1998, Wilson was convicted of capital murder for killing two or more persons pursuant to one scheme or course of conduct and for two counts of attempted murder. As to his capital-murder conviction, the jury

5

unanimously recommended that Wilson be sentenced to death, and the trial court followed that recommendation. As to his attempted-murder convictions, the trial court sentenced Wilson to 20 years' imprisonment for each offense, ordering his 20-year sentences to run consecutively with his death sentence. This Court affirmed Wilson's capital-murder conviction and death sentence on November 19, 1999.[1] See Wilson, supra. The Alabama Supreme Court affirmed this Court's judgment on September 20, 2000. See Ex parte Wilson, 777 So. 2d 935 (Ala. 2000). This Court issued a certificate of judgment that same day.

On December 21, 2001, Wilson filed a Rule 32 petition, challenging his capital-murder conviction and death sentence as well as his attempted-murder convictions and 20-year sentences.[2] In his initial petition, Wilson alleged the following:

---

[1]Wilson did not appeal his attempted-murder convictions or his 20-year sentences.

[2]"Rule 32.2(c), Ala. R. Crim. P., was amended effective August 1, 2002, to reduce the limitations period from two years to one year; however, for those cases that became final before August 1, 2001, the two-year limitations period applies. See Hyde v. State, 950 So. 2d 344 (Ala. Crim. App. 2006)." Bryant v. State, 29 So. 3d 928, 933 n.2 (Ala. Crim. App. 2009). Because Wilson's capital-murder conviction became final on September 20, 2000, the two-year limitations period applies to his Rule 32 petition.

6

- That his trial counsel were ineffective.

- That the State failed to comply with <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

- That the trial court erred when it admitted evidence of Wilson's prior offenses.

- That the trial court erred when it admitted "improper opinion testimony in support of aggravating circumstances." (Supp. Record on Appeal, C. 61.)

- That the trial court erred "by not instructing the jury on the lesser-included offense of felony murder." (Supp. Record on Appeal, C. 62.)

- That the trial court and the State "improperly minimized the jury's role in the capital sentencing scheme." (Supp. Record on Appeal, C. 64.)

- That the trial court erred when it improperly instructed the jury. (Supp. Record on Appeal, C. 66.)

- That the "indictment did not correspond with the State's proof, denying [him] a fair trial and an accurate sentencing determination." (Supp. Record on Appeal, C. 68.)

- That the State improperly "used peremptory strikes to remove women from the jury." (Supp. Record on Appeal, C. 70.)

- That the State improperly "commented on [his] silence" after he had been <u>Mirandized</u>. (Supp. Record on Appeal, C. 71.)

- That the trial court "failed to consistently find and consider mitigating circumstances." (Supp. Record on Appeal, C. 72.)

- That the State engaged in prosecutorial misconduct; that "the jury was improperly informed about the case outside the presence of the trial court or Mr. Wilson because the trial court failed to control the venire." (Supp. Record on Appeal, C. 85-86.)

- That the trial court erred when it did not "grant [him] youthful offender status." (Supp. Record on Appeal, C. 86.)

- That he did not have an "impartial and fair minded jury" because the trial court "refused to excuse unqualified jurors or allow individual voir dire." (Supp. Record on Appeal, C. 87.)

- That the trial court improperly interfered with voir dire.

- That the trial court "erred by relying on an inadequate and cursory presentence report." (Supp. Record on Appeal, C. 91.)

- That "the aggravating circumstance that Mr. Wilson created a great risk of death to many persons is unconstitutionally vague." (Supp. Record on Appeal, C. 92.)

- That the trial court erred when it denied his motion for a change of venue, when it did not allow him to depose the State's expert witness, and when it admitted certain photographs at his trial; that "a strong victim's presence in the courtroom deprived [him] of a fair trial and accurate sentence determination." (Supp. Record on Appeal, C. 98.)

8

- That the manner of execution in Alabama -- at the time, electrocution -- is unconstitutional; that the State's evidence was insufficient to show that Wilson committed a capital murder of two or more people pursuant to one scheme or course of conduct.

- That the State's evidence was insufficient to support his attempted-murder convictions.

- That "the cumulative effect of all the above listed claims entitles [him] to postconviction relief." (Supp. Record on Appeal, C. 105.)

After Wilson filed his petition, the following occurred:

"On March 14, 2002, Wilson's attorney filed a motion seeking a status or scheduling conference and also seeking leave to amend the petition. In support of the request to amend the petition, the attorney alleged that he had been hired only a few days before the petition was filed; that, due to previous obligations, he had been unable to work on Wilson's case until the third week in January and that he had not met with Wilson until February 14, 2002. Counsel also alleged that several additional meritorious issues existed and needed to be raised in the petition and that the request to amend the petition was not made for purposes of delay. Also on March 14, 2002, Wilson filed an amendment to the Rule 32 petition. On March 18, 2002, the State, through the attorney general, filed the following documents: an answer to the original petition; the affidavit of Randall Gladden, the lead attorney who represented Wilson at trial; a motion for summary dismissal; and a proposed order dismissing the petition. On March 26, 2002, the Madison County District Attorney filed a response to the original petition. The prosecutor alleged in that response that the petition was due to be summarily dismissed.

"Although the record does not contain an order setting a hearing on the State's motion for summary dismissal, it appears that a hearing was set for May 23, 2002, because on April 23, 2002, Wilson filed a motion seeking a continuance of a hearing set for May 23, 2002. The trial court granted the motion on April 24, 2002. On May 6, 2002, the State filed a document opposing any further continuances and requesting that an evidentiary hearing be held on any motion to amend that Wilson might later file.

"On July 15, 2002, Wilson filed numerous documents. He filed a motion for leave to file a second amended petition and a memorandum of law in support of that motion; he also submitted an amended petition. He filed a motion for discovery, seeking production of the file that the prosecutor had provided to trial counsel and seeking any other documents that should have been, but were not, provided to trial counsel. He filed a motion for an evidentiary hearing and an objection to the trial court's adopting verbatim any orders submitted by the State. He also filed a response to the State's answer and argued in that response that the claims raised in the petition were not procedurally barred and that he was entitled to a hearing. On July 19, 2002, the trial court held a hearing on the State's motion for summary dismissal. At that hearing, the parties presented their arguments regarding whether the original petition was due to be dismissed or whether a hearing on the merits of the petition should be held. The trial court reserved its ruling on the motion. On August 9, 2002, Wilson filed a motion for leave to file a third amendment to his petition and he submitted an amended petition; on August 21, 2002, Wilson filed a motion for leave to file a fourth amendment to the petition and he filed an amended petition; and on August 28, 2002, Wilson filed a motion for leave to file a fifth amendment to the petition and he filed an amended petition. In September 2002, Wilson filed a supplemental brief in support of his request for an evidentiary hearing, and he cited Ex parte MacEwan, 860 So.

2d 896 (Ala. 2002), in support of his request for an evidentiary hearing.

> "On October 16, 2002, the circuit court issued an order summarily dismissing the Rule 32 petition. The court determined that a majority of the claims asserted in the petition were procedurally barred and that the few ineffective-assistance-of-counsel claims that were not procedurally barred had no merit. The trial court also denied all of Wilson's motions to amend the Rule 32 petition."

Wilson v. State, 911 So. 2d 40, 42-43 (Ala. Crim. App. 2005) (footnotes and record citations omitted). Wilson appealed the circuit court's judgment.

In that appeal, Wilson argued, in part, that the circuit court "erred when it 'ignored' his repeated requests to amend the Rule 32 petition." 911 So. 2d at 44. On April 29, 2005, this Court, relying on Ex parte Rhone, 900 So. 2d 455 (Ala. 2004), issued an opinion agreeing with Wilson and explaining as follows:

> "Wilson filed the petition on December 21, 2001. He filed motions to amend and he filed amendments to the petition from March 2002 through August 2002. The trial court summarily denied all of the motions to amend the petition in the same written order in which it denied relief on the original Rule 32 petition. All of Wilson's proposed amendments were filed before the expiration of the limitations period of Rule 32.2(c), Ala. R. Crim. P. The State's arguments in support of the denial of the motions to amend -- that Wilson did not establish that the amendments were based on surprise, newly discovered evidence, or changed

11

circumstances, and that Wilson failed to establish that his attorney acted diligently in filing the amendments -- fail to acknowledge the standard the Alabama Supreme Court has established for evaluating whether an amendment to a Rule 32 petition was properly denied. That standard, as expressed in Ex parte Rhone, [900 So. 2d 455 (Ala. 2004)], does not require Wilson to establish that the allegations in the proposed amendments were based on surprise, newly discovered evidence, or changed circumstances, nor did it require proof that counsel acted diligently. The Alabama Supreme Court in Ex parte Rhone overruled Cochran v. State, 548 So. 2d 1062 (Ala. Crim. App. 1989), and any other prior decisions that purported to place on the petitioner the burden of showing due diligence in filing the amendment or showing that the facts underlying the amendment were not known when the initial petition was filed. 900 So. 2d at 458. The Court in Ex parte Rhone stated, 'The right to amend is limited by the trial court's discretion to refuse an amendment based upon factors such as undue delay or undue prejudice to the opposing party.' Id.

"Wilson's first amended petition was filed on March 14, 2002, before the State filed its answer. Certainly there was no undue delay and no prejudice to the State with regard to this amendment. The trial court abused its discretion when it denied Wilson's motion to amend the petition to include more specific allegations of ineffective assistance of counsel.

"It is important to note that, when the State filed its answer to Wilson's original petition, it also filed an affidavit from Wilson's lead trial attorney. In the affidavit the attorney offered his explanations for some of the decisions he made during the trial, such as his determination that a defense based on mercy was appropriate. In the July 15, 2002, second amended petition, Wilson stated, 'For continuity reasons, Joseph Wilson is merging the allegations of his first amendment to his Rule 32 petition into his second amendment to his rule [sic] petition.' (C. 220.) In the second

12

amended petition, Wilson directly addressed the claims made by his lead trial attorney in the affidavit the State submitted with its answer and alleged that trial counsel did not conduct an investigation into possible mitigation evidence. Wilson alleged that trial counsel had known that he had ingested drugs and alcohol on the evening the crime was committed, but that they did not further investigate his addiction. Wilson further alleged that because trial counsel failed to conduct an investigation into mitigation evidence, they failed to discover numerous pieces of potential mitigation evidence, such as the facts that Wilson had physical problems at birth, and at the time of the crime was on medication that might have affected his behavior; that as a child his home life was 'disturbed' and that his behavior at school indicated a possible learning disability; and that he had been abusing drugs and alcohol for years. Wilson also alleged that trial counsel failed to move for expert assistance from a mental health professional who could have investigated, developed, and presented the mitigation evidence, and that the failure to discover and present mitigation evidence prejudiced his case. Wilson's second amended petition contained additional responses to the trial attorney's affidavit and further developed claims raised in the original petition.

"The trial court erred when it denied Wilson's motion to file the second amended petition. The second amended petition was filed seven months after the original petition was filed; it specifically responded to allegations in the State's answer to the petition and to claims trial counsel made in the affidavit accompanying the answer. The trial court relied on trial counsel's affidavit when it denied Wilson's ineffective-assistance claims, yet by refusing to hold an evidentiary hearing and by denying Wilson's motion to amend, it also unilaterally denied Wilson his right to counter the evidence presented by the State. Under the principles clearly expressed by the Alabama Supreme Court in Ex parte Rhone, we are compelled to hold that the trial court erred to reversal when it denied Wilson's second motion to amend the petition.

13

"Wilson's revised third amended petition, filed on August 19, 2002, contains several claims related to Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), which was released after the original petition was filed. The trial court abused its discretion when it denied Wilson's motion to file the third amended petition. There was no undue delay in the filing and there would have been no undue prejudice to the State if the trial court had granted the motion to amend. Although the trial court erred when it denied the motion to file the third amended petition, that error was harmless. In Schriro v. Summerlin, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004), the United States Supreme Court held that the rule announced in Ring does not apply retroactively to postconviction cases. Wilson had filed his postconviction petition before Ring was decided. Therefore, even if the trial court had granted the motion to amend, Wilson would not have been entitled to any relief.

"The trial court erred when it denied Wilson's August 21, 2002, motion to file a fourth amended petition, and Wilson's August 28, 2002, motion to file a fifth amended petition. In the fourth amendment, Wilson further responded to the affidavit of trial counsel that had been submitted with the State's answer. In that amendment Wilson made additional allegations of ineffective assistance of counsel. In the fifth amendment, Wilson responded to trial counsel's allegations regarding the mitigation case he presented at trial and quoted from an article regarding investigation in capital cases. Because the trial court failed to hold an evidentiary hearing, Wilson was able to respond to the assertions in his lead trial counsel's affidavit only by filing amendments to the original petition. Concerns of undue delay and undue prejudice to the State were not implicated as a result of these amendments; concerns of fairness and due process were implicated. Therefore, the trial court should have granted Wilson's motion to file the fourth and fifth amended petitions."

14

Wilson, 911 So. 2d at 44-46. This Court reversed the circuit court's summary dismissal and its denial of "some of Wilson's motions to amend the petition" and remanded Wilson's case to the circuit court for that court to "address the allegations contained in the second, fourth, and fifth amended petitions." Wilson, 911 So. 2d at 46 (emphasis added).

In so doing, this Court instructed the circuit court that the State "must be afforded the opportunity to answer the allegations in the petition, as amended." Id. at 47. And because the State had attached an affidavit to its answer and the circuit court had "indicated in its order that it had relied on the State's answer when it summarily dismissed the petition," this Court urged the circuit court to "give careful consideration to holding an evidentiary hearing on the claims presenting factual disputes so that both parties are afforded the right to present evidence and to cross-examine any witnesses." Id. (emphasis added). This Court also pointed out that it was particularly concerned with Wilson's allegation that his trial counsel had "failed to conduct any investigation into potential mitigation evidence and that his decisions regarding trial strategy in both the guilt and penalty phases were based on his inadequate investigation." Id. Finally, this Court recognized that,

15

although it found on direct appeal that "the evidence of Wilson's guilt was overwhelming," that finding

> "does not preclude Wilson from presenting and receiving review of his postconviction claims in accordance with the mandates of Rule 32. At a minimum, Wilson is entitled to a thorough review of all of his properly pleaded claims, and he is entitled to an opportunity to prove the allegations of those claims that are not due to be summarily dismissed."

Id. After the judgment was reversed and the case was remanded to the circuit court in 2005, Wilson's case languished in that court for more than 16 years.

On July 15, 2005, the State answered Wilson's second, fourth, and fifth amendments to his Rule 32 petition. (C. 31-76.) And, on August 26, 2005, Wilson filed a "Motion for Leave to File a Sixth Amendment to his Rule 32." (C. 78-202.) In response, the State moved the circuit court to deny Wilson's motion to amend his Rule 32 petition for a sixth time.[3] (C. 245-51.)

Almost eight years later, on June 25, 2013, a new assistant attorney general entered a notice of appearance in the circuit court in Wilson's

---

[3]The circuit court denied Wilson's motion to amend his petition for a sixth time on June 29, 2015. (C. 281.) Wilson makes no argument on appeal that the circuit court erred when it denied his motion to amend his petition for a sixth time.

case (C. 277), and on July 1, 2013, the presiding circuit judge entered the following order:

> "This cause came before the Court on a letter from Assistant Attorney General Jon B. Hayden dated June 25, 2013 respectfully requesting inquiry regarding post-conviction proceedings in the [Wilson] cause. This Court has learned that a Certificate of Judgment from the Alabama Court of Criminal Appeals dated May 18, 2005, reversing and remanding a ruling of the trial court, was never entertained by the assigned Judge who has now retired. As such, it is hereby ORDERED, ADJUDGED and DECREED that this matter be reassigned to the Honorable Donna S. Pate, Circuit Judge, for immediate review and proceedings consistent with the 2005 Order of the Alabama Court of Criminal Appeals."

(C. 279.)

Almost two years after the entry of the order from the presiding circuit judge, on June 29, 2015, the appointed circuit judge issued an order (1) denying Wilson's motion to amend his petition a sixth time, (2) giving the State an opportunity to "supplement its previously filed responses to defendant's second, fourth, and fifth amendments, if it so chooses," and (3) giving Wilson an opportunity to respond to any supplemental response the State files. (C. 281.)

Thereafter, on August 31, 2015, the State filed its "Amended Answer and Motion to Dismiss Wilson's Second, Fourth, and Fifth Amendments to his Rule 32 Petition." (C. 282-322.)

17

On February 10, 2016, the State filed a "Request for a Ruling" on its amended answer and motion to dismiss, noting that Wilson's deadline for filing a response to the State's motion had "long passed." (C. 342-44.) The circuit court took no action on the State's request. Then, over two years later, on September 20, 2018, the State filed a second request for a ruling on its motion to dismiss. (C. 365-68.) Again, the circuit court took no action.

On August 19, 2021, the State filed a third request for a ruling on its motion to dismiss. (C. 372-77.) Then, on October 1, 2021, the circuit court issued a 92-page order summarily dismissing Wilson's second, fourth, and fifth amended petions, finding that it had "carefully and thoroughly reviewed all claims in Wilson's Second, Fourth, and Fifth Amended Petitions and can discern no factual disputes requiring an evidentiary hearing." (C. 379-470.) This appeal follows.

<u>Standard of Review</u>

It is well settled that a circuit court may summarily dismiss a Rule 32 petition pursuant to Rule 32.7(d), Ala. R. Crim. P.,

> "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the

18

petitioner to relief under this rule and that no purpose would be served by any further proceedings ...."

See also Hannon v. State, 861 So. 2d 426, 427 (Ala. Crim. App. 2003); Cogman v. State, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); Tatum v. State, 607 So. 2d 383, 384 (Ala. Crim. App. 1992).

And it is equally well settled that, when reviewing a circuit court's summary dismissal of a postconviction petition, "'[t]he standard this Court uses … is whether the [circuit] court abused its discretion.'" Lee v. State, 44 So. 3d 1145, 1149 (Ala. Crim. App. 2009) (quoting Hunt v. State, 940 So. 2d 1041, 1049 (Ala. Crim. App. 2005)). If the circuit court bases its decision on a "'cold trial record,'" however, our standard of review is de novo. Ex parte Hinton, 172 So. 3d 348, 353 (Ala. 2012). "[W]hen reviewing a circuit court's rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason." Bush v. State, 92 So. 3d 121, 134 (Ala. Crim. App. 2009).

Here, the circuit court summarily dismissed some of Wilson's claims because they were without merit or failed to state a claim for relief. Some of Wilson's claims, however,

"were summarily dismissed based on defects in the pleadings and application of the procedural bars in Rule 32.2, Ala. R.

19

Crim. P. When discussing the pleading requirements for postconviction petitions, we have stated:

> "'The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petition is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So. 2d 724 (Ala. Crim. App. 2003).'

"Hyde v. State, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).

> "'"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." Boyd v. State, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided under Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts.'

"Boyd v. State, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003). '[T]he procedural bars of Rule 32[.2, Ala. R. Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.' Burgess v. State, 962 So. 2d 272, 277 (Ala. Crim. App. 2005)."

20

Washington v. State, 95 So. 3d 26, 38-39 (Ala. Crim. App. 2012). Finally, we note that, in reviewing Wilson's appeal from the summary dismissal of his Rule 32 petition, "the plain-error standard of review does not apply." James v. State, 61 So. 3d 357, 362 (Ala. Crim. App. 2010) (citing Ex parte Dobyne, 805 So. 2d 763 (Ala. 2001)). With these standards in mind, we turn to Wilson's arguments.

## Discussion

On appeal, Wilson argues that the circuit court erred when it summarily dismissed both his guilt-phase and penalty-phase claims of ineffective assistance of counsel. Wilson also argues that the circuit court erred when it dismissed his claims that the State "violated its constitutional obligations under Brady v. Maryland[, 373 U.S. 833 (1963)]" (Wilson's brief, p. 45); that the State made "repeated comments on [his] silence after receiving Miranda[ v. Arizona, 384 U.S. 436 (1966),] warnings and invoking" his rights (Wilson's brief, p. 47); and that there was "[p]ervasive prosecutorial misconduct" during his trial (Wilson's brief, p. 49). We address each argument in turn.

# I. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's performance was deficient and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668 (1984). The oft-repeated standard courts use to review claims of ineffective assistance is as follows:

> "'"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

"'Strickland, 466 U.S. at 689, 104 S. Ct. 2052.

"'"[T]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S. Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) ('We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S. Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S.

> 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d
> 638 (1987)."
>
> "'Chandler v. United States, 218 F.3d 1305, 1313-
> 14 (11th Cir. 2000) (footnotes omitted).
>
> "....
>
> "We also recognize that when reviewing claims of
> ineffective assistance of counsel 'the performance and
> prejudice components of the ineffectiveness inquiry are mixed
> questions of law and fact.' Strickland v. Washington, 466 U.S.
> 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."

Marshall v. State, 182 So. 3d 573, 582-83 (Ala. Crim. App. 2014).

> "To sufficiently plead an allegation of ineffective
> assistance of counsel, a Rule 32 petitioner not only must
> 'identify the [specific] acts or omissions of counsel that are
> alleged not to have been the result of reasonable professional
> judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104
> S. Ct. 2052, 80 L. Ed. 2d 674 (1984), but also must plead
> specific facts indicating that he or she was prejudiced by the
> acts or omissions, i.e., facts indicating 'that there is a
> reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different.'
> 466 U.S. at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674. A bare
> allegation that prejudice occurred without specific facts
> indicating how the petitioner was prejudiced is not sufficient."

Hyde v. State, 950 So. 2d 344, 356 (Ala. Crim. App. 2006). See also Daniel

v. State, 86 So. 3d 405, 416 (Ala. Crim. App. 2011). Because "the claim

of ineffective assistance of counsel is a general allegation that often

consists of numerous specific subcategories," "[e]ach subcategory is an

24

independent claim that must be sufficiently pleaded." Coral v. State, 900 So. 2d 1274, 1284 (Ala. Crim. App. 2004), overruled on other grounds, Ex parte Jenkins, 972 So. 2d 159 (Ala. 2005). With these well-settled principles in mind, we address Wilson's arguments concerning his ineffective-assistance-of-counsel claims.

### I.A.  Guilt-Phase Claims

### I.A.1

Wilson first argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective for "filing an untimely and insufficiently supported motion for change of venue." (Wilson's brief, p. 10.) Wilson's argument is without merit.

In his initial petition, Wilson alleged that his counsel were ineffective because they filed a motion for a change of venue "less than six weeks before the then-scheduled trial date of November 3, 1997." (Supp. C. 34.) Wilson said that the "lateness" of the filing meant that the trial court could not hold a hearing on the motion until October 23, 1997, and that his counsel's delay caused "this meritorious motion to be rejected in part because it was untimely." (Supp. C. 34.) According to Wilson, "[b]ut for the untimely nature of this pleading, the motion would

have been granted, for the evidence presented in support of the motion was overwhelming." (Supp. C. 34.)

The circuit court dismissed Wilson's claim "for several reasons." (C. 420.)

"First, it is not pleaded with sufficient specificity. Wilson's allegation that the motion would not have been granted if filed earlier is merely a conclusion for which no factual basis is pleaded. Further, he pleads no facts establishing a reasonable probability that the outcome of his trial would have been different had counsel filed the motion to transfer venue sooner.

"Second, it is clear from the record that Judge Fay held a hearing on the motion and denied it on the merits. Judge Fay's October 24, 1997 order states:

"'MOTION FOR CHANGE OF VENUE. After a full hearing on this motion, and after the Court having viewed a number of video tapes and read exhibits introduced by the Defendant, the Court finds that this motion is due to be denied at this time based on the evidence submitted at the hearing. The Court specifically notes that this motion is denied on its merits, although the motion was not timely presented as contemplated by Rule 10 of the Alabama Rules of Criminal Procedure.'

"(Citations omitted.)

"Thus, Wilson cannot establish prejudice under the Strickland standard in regard to the timing of the motion. Further, ... the trial court's denial of Wilson's motion for change of venue was raised on appeal. The Court of Criminal Appeals found that the trial court did not abuse its discretion

26

in denying Wilson's motion for change of venue. <u>Wilson v. State</u>, 777 So. 2d at 926. Wilson can therefore not establish prejudice under <u>Strickland</u>."

(C. 420-21.) We agree with the circuit court's judgment.

As set out above, Wilson alleged that his counsel's motion for a change of venue was "meritorious," but the trial court denied the motion because it was untimely filed. As the circuit court pointed out in its order dismissing this claim, however, the trial court denied Wilson's change-of-venue motion because it lacked merit, not because it was untimely. Thus, Wilson's claim that his counsel were ineffective for failing to file a motion for a change of venue earlier is without merit, and the circuit court properly dismissed his claim under Rule 32.7(d), Ala. R. Crim. P., because there is "no material issue of fact or law" that exists that "would entitle [Wilson] to relief" and because "no purpose would be served by any further proceedings" on this claim.

Additionally, the circuit court correctly dismissed Wilson's claim because he failed to sufficiently plead facts showing that he was prejudiced by his counsel's allegedly "untimely" filing. Because the trial court denied Wilson's motion on the merits, it is clear that even if Wilson's counsel had filed the motion for a change of venue earlier, the

27

result of the proceeding would have been the same. Indeed, as the circuit court noted in its order, this Court affirmed the trial court's judgment denying Wilson's motion for a change of venue on its merits, holding:

> "After examining the media materials the appellant presented to the trial court, we conclude that those materials did not contain prejudicial information. Rather, most of the reports were factual and relatively objective rather than accusatory, inflammatory, or sensational. Further, the appellant did not show that the media coverage inflamed or saturated the community so that there was an emotional tide against him. Therefore, he has not shown that the pretrial publicity about his case was so inherently or presumptively prejudicial as to constitute one of those 'extreme situations' that warrant a presumption of prejudice caused by pretrial publicity."

Wilson v. State, 777 So. 2d at 925. Although Wilson makes the bare allegation that, if his counsel had "timely" filed the motion, then "the motion would have been granted," Wilson does not plead any facts as to how the trial court's merits analysis would have differed had his counsel filed the motion earlier. Accordingly, the circuit court did not err when it summarily dismissed this claim.

## I.A.2

Wilson next argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were "ineffective for failing to adequately challenge for cause veniremembers unqualified for stating

28

they could not presume Mr. Wilson innocent, or otherwise indicated they could not give him a fair trial." (Wilson's brief, p. 12.) Wilson's argument is without merit.

In his initial petition, Wilson alleged that his counsel were ineffective

> "for failing to adequately challenge for cause against unqualified veniremembers who said that they would not be able to give Mr. Wilson the presumption of innocence, or otherwise indicated they would be unable to give [him] a fair trial. Counsel did not make any challenge for cause against a veniremember who said that he would require Mr. Wilson to prove his innocence. (R. 587-88.) Mr. Wilson failed to make adequate objection or provide proper authority to support challenges against other veniremembers, including veniremembers with significant and unsurmountable bias against Mr. Wilson or his counsel. See, Claim XV, infra, which is incorporated herein by reference. As a result, Mr. Wilson was forced to use peremptory challenges to remove these biased veniremembers."

(Supp. C. 35-36.) In "Claim XV," which Wilson incorporated by reference in his claim of ineffective assistance of counsel, Wilson alleged that "three veniremembers plainly indicated that they were unfit to serve on [his] jury[;] nonetheless [they] were not removed for cause." (Supp. C. 88.) Wilson said that "Juror [B] believed that Mr. Wilson would have to prove his innocence," that Juror "[M] informed the court that her daughter's fiancé was murdered, and that [Wilson's counsel] represented the

29

accused murderer," and that Juror "[G] indicated that she knew the family of one of the victims, had been to the store that they operated, and that she attended the same church as the family."  (Supp. C. 88-89.)

The circuit court summarily dismissed this claim as follows:

"Wilson questions counsel's failure to challenge juror [B] for cause.  The record is clear, however -- as confirmed by the Court of Criminal Appeals -- that juror [B] <u>was</u> struck for cause.  <u>Wilson</u>, 777 So. 2d at 915 ( ... 'it appears from the strike list included in the record that the trial court did indeed excuse venire member J.B. for cause')

"Wilson also cites counsel's failure to successfully challenge jurors [M] and [G].  The Court of Criminal Appeals reviewed the issue whether those jurors should have been excused for cause, finding no error (or, in the case of [M], no plain error).  <u>Wilson</u>, 777 So. 2d at 915.  Wilson's petition pleads no facts showing how he was prejudiced by counsel's failure to challenge these jurors, and pleads no facts showing a reasonable probability that the result of his trial would have been different if a challenge had been made.  Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P.

"To the extent that [his petition] challenges counsel's actions with regard to other jurors, such claim lacks specificity. Wilson does not identify which other jurors should have been challenged for cause, and does not identify the answers or statements upon which he bases his claim that a challenge for cause should have been made."

(C. 425.)  We agree with the circuit court's judgment.

To start, the circuit court correctly dismissed Wilson's claim that his counsel was ineffective for not having Juror B struck for cause because the record on direct appeal (and this Court's opinion affirming Wilson's conviction and sentence) shows that the trial court removed Juror B for cause based on his responses during voir dire. See Wilson, 777 So. 2d at 913-15. Consequently, Wilson cannot show that he was prejudiced by his counsel's alleged failure to move to have Juror B struck for cause. Indeed, common sense dictates that counsel cannot be ineffective for failing to do what was actually done. Thus, the circuit court properly dismissed Wilson's claim.

The circuit court also correctly dismissed Wilson's claim that his counsel was ineffective for failing to challenge Juror M for cause when Juror "[M] informed the court that her daughter's fiancé was murdered, and that [Wilson's counsel] represented the accused murderer." (Supp C. 88.) Wilson's claim, as pleaded, fails to show that the prospective juror should have been struck for cause; thus, it fails to show that his counsel's performance was deficient or that he was prejudiced by his counsel's alleged deficient performance.

31

In Wilson's direct appeal, this Court explained the standard used

to determine whether a juror may be removed for cause as follows:

> " 'Section 12-16-150, Code of Alabama 1975,
> provides that, when a juror "has a fixed opinion as
> to the guilt or innocence of the defendant which
> would bias his verdict," a challenge for cause is
> proper. Nobis v. State, 401 So. 2d 191 (Ala. Crim.
> App.), cert. denied, 401 So. 2d 204 (Ala. 1981). The
> juror must have more than a bias, or fixed opinion,
> as to the guilt or innocence of the accused. The
> juror's opinion must be fixed to the point that it
> would bias the verdict which the juror would be
> required to render. Johnson v. State, 356 So. 2d
> 769 (Ala. Cr. App. 1978); McCorvey v. State, 339
> So. 2d 1053 (Ala. Cr. App.), cert. denied, 339 So. 2d
> 1058 (Ala. 1976); Tidmore v. City of Birmingham,
> 356 So. 2d 231 (Ala. Crim. App. 1977), cert. denied,
> 356 So. 2d 234 (Ala. 1978).'

> "Thomas v. State, 539 So. 2d 375, 380 (Ala. Cr. App.), aff'd,
> 539 So. 2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.
> Ct. 3201, 105 L. Ed. 2d 709 (1989). Also,

> > " ' "[u]ltimately, the test to be applied is
> > whether the juror can set aside [his]
> > opinions and try the case fairly and
> > impartially, according to the law and
> > the evidence. This determination
> > again is to be based on the juror's
> > answers and demeanor and is within
> > the discretion of the trial judge. Thus,
> > a prospective juror should not be
> > disqualified for prejudices or biases if it
> > appears from his or her answers and
> > demeanor that the influence of those
> > prejudices and biases can be eliminated

32

and a verdict rendered according to the evidence."'

"Marshall v. State, 598 So. 2d 14, 16 (Ala. Cr. App. 1991) (citations omitted) (quoting Knop v. McCain, 561 So. 2d 229, 232 (Ala.1989))."

Wilson, 777 So. 2d at 912-13.

In his direct appeal, Wilson argued (just as he does in his Rule 32 petition) that Juror M should have been struck for cause because Juror M's "daughter's fiancé was murdered and defense counsel represented the person accused of committing the murder." Id. at 915. This Court, reviewing Wilson's claim for plain error, see Rule 45A, Ala. R. App. P., rejected Wilson's argument, holding:

> "During voir dire examination, [Juror M] stated that she did not have any animosity toward defense counsel, that defense counsel's participation in the previous case would not affect her decision in this case, that she would not hold the State to a higher burden of proof than is required by law, and that she would not expect the defendant to take the stand or otherwise present any defense. (R. 494-95.) From these answers, the trial court could have reasonably concluded that [Juror M] was not biased against the appellant. Therefore, we do not find any plain error in this regard."

Wilson, 777 So. 2d at 915.

In other words, this Court held that the substantive claim underlying Wilson's ineffective-assistance-of-counsel claim did not rise to

33

the level of plain error. Although it is true that this Court's finding of no plain error on direct appeal does not preclude "a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel," Ex parte Taylor, 10 So. 3d 1075, 1078 (Ala. 2005), "situations where no plain error rises to the level of error under Strickland [are] 'rare.'" White v. State, 343 So. 3d 1150, 1185 (Ala. Crim. App. 2019). This is not one of those rare situations where no plain error rises to the level of prejudice under Strickland. What is more, Wilson pleaded no facts in his petition or in any of his amendments thereto showing what additional arguments his counsel could have raised or what other additional authorities his trial counsel could have presented to show that Juror M harbored the type of prejudice or bias that is required to sustain a strike for cause. Thus, the circuit court did not err when it dismissed this claim.

Additionally, the circuit court properly dismissed Wilson's claim that his counsel were ineffective for failing "to make adequate objection or provide proper authority to support" striking for cause Juror G when that juror "indicated that she knew the family of one of the victims, had been to the store that they operated, and that she attended the same

34

church as the family." (Supp. C. 88-89.) Indeed, on direct appeal this Court rejected the substantive argument underlying Wilson's claim of ineffective assistance of counsel, holding:

> "[Wilson] contends that the trial court should have excused [Juror G] for cause because she knew the Hemphill family, had been to the store the family operated, and attended the church the family attended. During voir dire examination, [Juror G] indicated that, even though she had been to the family's store and to the church members of the family attended, she did not know the family well. Rather, she simply recognized them when she saw them. (R. 471.) Also, she stated that she would not be biased against the appellant because of any knowledge she might have about the Hemphill family. (R. 471.) In refusing to excuse [Juror G] for cause, the trial court specifically stated that it remembered [Juror G] stating that she could be fair and that she knew the Hemphill family only vaguely. (R. 537.) Knowledge of the victim's family, alone, does not justify a challenge for cause. See McKinney v. State, 654 So. 2d 95 (Ala. Cr. App. 1995). Therefore, the trial court did not err in refusing to excuse [Juror G] for cause."

Wilson, 777 So. 2d at 915. Because the substantive claim underlying Wilson's claim of ineffective assistance of counsel is without merit, his allegation that his counsel were ineffective fails. See Carruth v. State, 165 So. 3d 627, 645 (Ala. Crim. App. 2014) (recognizing that counsel is "not ineffective for failing to raise a baseless objection").

Finally, as the circuit court correctly concluded, to the extent that Wilson's claim of ineffective assistance of counsel refers to other jurors,

35

that claim is insufficiently pleaded because Wilson failed to identify by name any juror his counsel should have moved to strike for cause. See Stallworth v. State, 171 So. 3d 53, 84-85 (Ala. Crim. App. 2013) (holding that Stallworth failed to sufficiently plead his claim that his counsel was ineffective for failing to strike for cause certain jurors when Stallworth failed to identify by name the jurors who should have been challenged for cause).

Accordingly, Wilson is due no relief on this claim.

### I.A.3

Next, Wilson argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were ineffective "for failing to object to gender discrimination during jury selection" in violation of J.E.B. v. Alabama, 511 U.S. 127 (1994). (Wilson's brief, p. 13.)

In his initial petition, Wilson alleged that his counsel was ineffective because

> "[t]he District Attorney in this case used twelve of his sixteen peremptory strikes, or 75%, to remove women from the venire. Counsel's failure to object to the State's gender discrimination meant that the State never had to give reasons for its facially discriminatory strikes. Had Mr. Wilson's counsel properly objected, the State would have been forced to attempt to justify its strikes, something it could not have done. This

36

failure of Mr. Wilson's counsel denied Mr. Wilson his right to equal protection of the laws and an impartial jury."

(Supp. C. 36.) Wilson also raised a substantive J.E.B. claim in his petition, in which he again alleged that the State "used its peremptory strikes to remove twelve women from Mr. Wilson's jury, leaving only three women on the jury." (Supp. C. 70.) According to Wilson, the number of peremptory strikes the State used to remove women from the venire "establishes a prima facie case of impermissible gender discrimination." (Supp. C. 71.)

The circuit court, in its judgment summarily dismissing Wilson's petition, addressed Wilson's substantive J.E.B. claim and his claim of ineffective assistance of counsel based on his counsels' failure to raise a J.E.B. claim together, finding as follows:

> "Wilson claims that the State unconstitutionally used 12 of its 16 peremptory strikes to remove women from the venire. This claim was reviewed for plain error on appeal. The Court of [Criminal] Appeals quoted from the decision of the Alabama Supreme Court in Ex parte Trawick, 698 So. 2d 162, 168 (Ala. 1997): 'Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.' After thoroughly reviewing the record on appeal, the Court concluded that it did not raise any inference that the State engaged in purposeful discrimination against women in its use of peremptory challenges. The Court found no plain error on this issue. Wilson, 777 So. 2d at 889.

37

"Because this issue was raised on appeal, further review is precluded by Rule 32.2(4), Ala. R. Crim. P. This claim is dismissed.

"Counsel's failure to object to the State's use of its peremptory strikes described above forms the basis of Wilson's [ineffective-assistance-of-counsel] claim .... Wilson failed to plead facts showing how he was prejudiced by counsel's failure to object, and failed to plead facts establishing a reasonable probability that the result would have been different had counsel objected. Because this claim is not sufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 405-06.) We agree with the circuit court's judgment.

As the circuit court correctly noted, in his direct appeal Wilson argued (just as he does in his Rule 32 petition) that "the prosecution's use of 12 of its 16 peremptory challenges to remove women from the venire establishes a prima facie showing of gender-based discrimination." Wilson, 777 So. 2d at 888. This Court, reviewing Wilson's argument for plain error, found as follows:

"'Alabama courts have recently held that even a showing that [a] party had struck a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick, 698 So. 2d 162, 168 (Ala. 1997), the Alabama Supreme Court held, "Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination."

38

> "'....
>
>> "'According to the record, the appellant in this case relied solely upon the fact that seven of the eight veniremembers struck by the prosecutor were black. According to the Alabama Supreme Court in <u>Ex parte Trawick</u> as well as the United States Supreme Court's interpretation of the burden in equal protection cases, these bare statistics were not sufficient to make a prima facie showing of discrimination.'
>
> "<u>Armstrong v. State</u>, 710 So. 2d 531, 533-35 (Ala. Cr. App. 1997).
>
>> "After thoroughly reviewing the record on appeal, we conclude that it does not raise any inference that the prosecution engaged in purposeful discrimination against women in its use of its peremptory challenges. Furthermore, the appellant's arguments in his brief do not raise such an inference. Accordingly, we do not find any plain error in this regard."

<u>Wilson</u>, 777 So. 2d at 888-89.

In his Rule 32 petition, Wilson alleged that his counsel were ineffective for failing to raise a <u>J.E.B.</u> claim based on only the number of peremptory strikes the State used to remove women from the venire. Again, although it is true that this Court's finding on direct appeal that there was no plain error does not preclude "a determination of the existence of the prejudice required under <u>Strickland</u> to sustain a claim of

39

ineffective assistance of counsel," Ex parte Taylor, 10 So. 3d at 1078, "situations where no plain error rises to the level of error under Strickland [are] 'rare.'" White, 343 So. 3d at 1185. This is not one of those rare situations where a finding of no plain error rises to the level of prejudice under Strickland. Because Wilson's claim of ineffective assistance of counsel rests on numbers alone, his allegation does not set forth any facts that would entitle him to any relief on his claim. See Largin v. State, 233 So. 3d 374, 403 (Ala. Crim. App. 2015) ("The State's use of 22 of 29 strikes against female veniremembers does not raise an inference of discrimination."). Thus, Wilson's claim does not entitle him to any relief, and the circuit court did not err when it summarily dismissed his claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.4

Wilson argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were ineffective for "failing to effectively advocate for youthful offender status or adequately object to failing to grant [him] youthful offender status." (Wilson's brief, p. 14.) Wilson's argument is without merit.

In his initial petition, Wilson alleged as follows:

"Counsel was ineffective for failing to effectively advocate in support of Mr. Wilson's application for youthful offender status or to adequately object to the trial court's failure to grant youthful offender status. Counsel was ineffective for failing to investigate, argue, or provide proper authority to the trial court during or after the extremely short youthful offender hearing (R. 2-3), which is fully described in Claim XIV, infra, and incorporated herein by reference. Counsel's failure to advocate or make an adequate objection resulted in Mr. Wilson's conviction and death sentence."

(Supp. C. 39.) In Claim XIV, which Wilson incorporated by reference into his claim of ineffective assistance of counsel, Wilson alleged that the trial court erred when it failed to grant him youthful-offender status because, he said, if "the trial court properly considered Wilson's age, lack of prior criminal history, employment record, it would have likely granted [his] application for youthful offender status." (Supp. C. 87.)

The circuit court summarily dismissed Wilson's claim as follows:

"Counsel's failure to effectively advocate in support of the youthful offender application, or object to its denial, forms the basis for Wilson's [ineffective-assistance-of-counsel] claim in Claim I, Paragraph 25. He also claims that his counsel was ineffective for failing to investigate, argue or provide proper authority to the trial court during or after the hearing. He then asserts that counsel's failures resulted in Wilson's conviction and death sentence.

"Wilson's argument in his regard is nothing more than blaming trial counsel for failing to succeed. 'A defendant

41

attorney ... is not ineffective solely because his client is sentenced to death.' Fleming v. Kemp, 748 F.2d 1435 (11th [Cir.] 1984). This claim is dismissed, first, because it is inefficiently pleaded. Wilson cites no facts establishing what else counsel should have done to advocate for youthful offender status. He pleaded no facts showing how he was prejudiced by counsel's omission, or facts establishing a reasonable probability that the result would have been different if counsel had said something else. Further, counsel's 'failure to object' in no way barred appellate review of the trial court's decision. Indeed, the issue was thoroughly reviewed by the Court of Criminal Appeals, who concluded:

> "'Clearly, the trial court considered the circumstances and nature of the case, as well as the Charge itself, in denying the application. Accordingly, it did not abuse its discretion in denying the appellant's request to be treated as a youthful offender.'

"Wilson, 777 So. 2d at 923. Because it is insufficiently pleaded, Wilson's Claim I, Paragraph 25 is dismissed. Rule 32.6(b), Ala. R. Crim. P."

(C. 410-11.) We agree with the circuit court's judgment.

Indeed, although Wilson alleged in his petition that his counsel were ineffective for failing "to investigate, argue, or provide proper authority to the trial court during or after the extremely short youthful offender hearing" (Supp. C. 39), Wilson did not set out with any specificity precisely what other arguments or authorities his counsel should have presented to the trial court. Nor did Wilson set out any facts showing

42

what his counsel could have learned if they had conducted any further investigation that could have affected the outcome of his youthful-offender hearing. Thus, Wilson's claim was insufficiently pleaded, and the circuit court did not err when it dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.5

Wilson next argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were ineffective for "failing to move to suppress/preclude [his] custodial statements after invocation of his right to remain silent in violation of [his] Fifth, Sixth, Eighth, and Fourteenth Amendment rights, and his multiple invocations of his right to remain silent." (Wilson's brief, p. 15.) Wilson also makes the related argument that the circuit court erred when it summarily dismissed his claim that trial counsel were ineffective for not objecting to the State's comments regarding his alleged invocation of his right to silence. Both of Wilson's claims were properly summarily dismissed because they were insufficiently pleaded and without merit.

In his initial petition, Wilson alleged that his counsel were ineffective for "not asking the court to suppress in-custody statements

made by the defendant after invocation of his right to remain silent."

(Supp. C. 40.) To support his claim that his counsel should have moved

to suppress his in-custody statements, Wilson alleged:

> "Although the authorities testified that Mr. Wilson initially signed a waiver of rights form, Mr. Wilson told authorities -- including police investigators Charles Franklin and Dwight Edger -- that he did not want to answer questions about the crime. (R. 912, 919.) In fact, part of the evidence which the state sought to introduce at trial was an audiotape containing the defendant's voice, telling his interrogators 'a minimum of five times that he wasn't talking to them, was through talking to them.' (R. 1367.) After questioning did not cease, however, Mr. Wilson eventually submitted to respond to questions from investigator Kevin Turner at approximately 6:30 AM and made several inculpatory statements which were admitted against him at trial. (R. 920-22.) In these statements, Mr. Wilson purportedly said that he was present at the crime scene, that he participated in striking a victim, that he was involved in the shooting, and referred to the co-defendants as his 'crew.' Turner also gave testimony concerning Mr. Wilson's demeanor during the questioning. (R. 922.) ... It was ineffective of trial counsel to not seek to have this evidence excluded."

(Supp. C. 40-41.) Wilson further alleged that his counsel were ineffective

"for failing to object to the State's comments on [his] exercise of his right

to remain silent during opening and closing statements." (Supp. C. 41.)

To support his claim, Wilson incorporated by reference facts from his

substantive claim that the State had improperly commented on his post-

Miranda silence. In that claim, Wilson alleged:

44

"From the very outset of the trial, through the evidentiary phase, and then at closing argument, the State impressed upon the jury that Mr. Wilson did not a) give a statement to the police and b) did not testify at the guilt phase of the trial. The first reference came during the State's opening argument. (R. 631.) Once the evidentiary phase of the trial began, the State deliberately elicited testimony about Mr. Wilson's decision to not give a statement to the police, from two separate police witnesses. (R. 912, 915-916.) Describing and stressing Mr. Wilson's invocation of his Sixth Amendment right to counsel was grossly improper and prejudicial to Mr. Wilson."

(Supp. C. 71.)

The circuit court summarily dismissed Wilson's claim that counsel were ineffective for failing to object to Wilson's post-<u>Miranda</u> silence (and the substantive claims underlying that claim) as follows:

"Wilson alleges that prosecutors deliberately and improperly elicited testimony from two separate police witnesses about his decision not to give them a statement, and improperly commented about his failure to testify during the guilt phase of trial. This issue was raised on appeal. The Court of Criminal Appeals noted that Wilson never invoked his right to remain silent during questioning by law enforcement officers, and in fact did make a statement to one officer in which he admitted his involvement in the offense. Further, the Court concluded that the prosecutor's comment regarding 'what he testified to a year ago in jail' referred to a comment Wilson made to a cellmate and the use of 'testified' was a misstatement by the prosecutor. <u>Wilson</u>, 777 So. 2d at 890.

"Because this issue was raised on appeal, further review is precluded, and this claim is dismissed. Rule 32.2(4), Ala. R. Crim. P.

"Counsel's failure to object to the foregoing forms the basis of Wilson's [ineffective-assistance-of-counsel] claim in Claim I, Paragraph 29. Wilson cites no facts showing how he was prejudiced by counsel's failure to object, and further cites no facts showing a reasonable probability that the result of the trial would have been different had counsel objected. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 406-07.)

In raising his argument on appeal that counsel were ineffective for failing to object to the prosecutor's comments on his exercise of his right to remain silent, Wilson challenges only the part of the circuit court's judgment finding "that the underlying claim was belied by the record" because, he says, "the record on its face is not dispositive." (Wilson's brief, p. 17.) Wilson does not address the circuit court's finding that his claim of ineffective assistance of counsel in relation to these alleged prosecutorial comments was insufficiently pleaded. Thus, "[Wilson] has failed to satisfy the requirements in Rule 28(a)(10)[, Ala. R. App. P.,] and is deemed to have waived this claim." Woodward v. State, 276 So. 3d 713, 747 (Ala. Crim. App. 2018). Even so, the circuit court correctly concluded

that Wilson failed to sufficiently plead any facts showing how he was prejudiced by his counsel's performance.

To support his claim regarding comments on the assertion of his right to remain silent, Wilson pointed to testimony presented at his trial concerning the statements that he made to law-enforcement officers after, he said, he had invoked his right to remain silent. But, as the circuit court noted, in Wilson's direct appeal this Court addressed Wilson's argument about his "post-<u>Miranda</u>" silence, finding that

> "[t]here is no indication in the record that the appellant ever invoked his right to remain silent during questioning by law enforcement officers. <u>See</u> <u>Hardy v. State</u>, 804 So. 2d 247 (Ala. Cr. App. 1999). Rather, the testimony indicates that he waived his right to remain silent and agreed to talk to the officers. The comments and testimony about which the appellant complains are not improper references to his post-<u>Miranda</u> silence. Rather, they are references to his waiver of his right to remain silent and the statements he made after that waiver. Even though he was reluctant to answer the questions some of the officers asked, he did not at any time clearly invoke his right to remain silent. Furthermore, error, if any, was harmless because the evidence against the appellant was overwhelming and because he actually made a statement to one officer in which he admitted his presence at the crime scene and his involvement in the offense."

<u>Wilson</u>, 777 So. 2d at 890.

In his petition Wilson cited portions of the record in his direct appeal detailing his statements to law-enforcement officers, but Wilson

47

alleged no facts that rebut this Court's finding on direct appeal that he never invoked his right to remain silent. Because he failed to plead such facts, Wilson has not alleged sufficient facts to show that his counsel's performance was deficient or that his counsel's performance prejudiced him.

The circuit court also correctly found that Wilson's related claim -- that "trial counsel was ineffective for not moving to suppress statements he made" -- is "belied by the record" and "lacks merit." (C. 429, 433.) This finding is supported by the record, which the circuit court quoted in detail in its order dismissing Wilson's petition. Moreover, in addition to lacking merit, this claim was also insufficiently pleaded. Wilson failed to plead which witnesses he would have called to support his claim and how those witnesses would have testified. Thus, Wilson failed to satisfy his burden of pleading his claim of ineffective assistance of counsel, and the circuit court did not err when it dismissed this claim. Accordingly, Wilson is due no relief on this claim under either argument.

I.A.6

Wilson argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were ineffective for "failing to adequately object to errors in the jury instructions." (Wilson's brief, p. 17.) The totality of Wilson's argument on appeal is as follows:

> "Trial counsel was ineffective for failing to adequately object to errors in the jury instructions which prejudiced Mr. Wilson because it authorized the jury to convict him without unanimity and without finding the requisite intent. This deficient performance included failing to provide proper authority in objecting and failing to propose instructions to that accurately set forth the law. This deficient performance resulted in Mr. Wilson's conviction and death sentence.

> "This claim was dismissed under Rule 32.2(4) as raised on direct appeal. Rule 32.2(4); (PCR. 404.) However, the court erroneously conducted no analysis of ineffectiveness under Strickland v. Washington."

(Wilson's brief, pp. 17-18.) Because Wilson's argument does not provide this Court with any argument or authorities explaining how the circuit court's judgment summarily dismissing this claim is incorrect, his argument does not satisfy Rule 28(a)(10), Ala. R. App. P. Thus, his argument is waived. See Travis v. State, 407 So. 3d 325, 340 (Ala. Crim. App. 2023). Even so, Wilson's argument is without merit.

In his initial petition, Wilson alleged that his trial counsel were ineffective when they failed "to adequately object to errors in the trial

49

court's jury instructions which authorized the jury to convict Mr. Wilson without unanimity and without finding the proper level of intent." (Supp. C. 47.) Wilson further alleged that his counsel failed "to provide proper authority to the trial court in opposition to these errors" and failed to "propos[e] instructions to the trial court which would comport with the law." (Supp. C. 47.) Wilson claimed that his counsel's errors "resulted in [his] conviction and death sentence." (Supp. C. 47.) Wilson also raised a substantive claim concerning the trial court's jury instructions, which he incorporated by reference in his claim of ineffective assistance of counsel.

In raising his substantive claim, Wilson alleged that, to convict him of the charged capital offense, the State "had to prove that Mr. Wilson intentionally killed at least two of the [four] victims." (Supp. C. 67.) Wilson claimed that the evidence presented at his trial showed that Acklin was responsible for the deaths and, thus, that "the question as to which deaths [he] was responsible for was critical." (Supp. C. 67.) According to Wilson, the trial court erred because "it failed to instruct the jury that they had to unanimously find beyond a reasonable doubt that [he] intentionally killed the same two victims." (Supp. C. 67.) Wilson claimed that, because of this error, "some jurors could have concluded

that [he] killed two particular victims while other jurors could have concluded that [he] killed a different two victims." (Supp. C. 67.) Wilson also alleged that the trial court erred when it instructed the jury on the lesser-included offense of intentional murder because, he argues, "the jury should have had the option of finding that [he] had committed four intentional murders to accommodate the conclusion that the killings did not occur in a single scheme or course of conduct." (Supp. C. 68.)

The circuit court summarily dismissed Wilson's claim of ineffective assistance of counsel and his substantive claim as follows:

> "Each of the foregoing claims, and other claimed errors in the trial court's charge, were raised on appeal. The Court of Criminal Appeals concluded that '[Wilson's] contention that the trial court's jury instructions deprived him of a fair trial and an accurate sentence determination is without merit.' Wilson, 777 So. 2d at 887.
>
> "Because this issue was raised on appeal, further review is precluded by Rule 32.2(4). This claim is dismissed.
>
> "Wilson's [ineffective-assistance-of-counsel] claim ... is based on counsel's failure to object to the jury charges outlined above. He cites no facts to establish how he was prejudiced by counsel's failure to object, nor does he cite facts establishing a reasonable probability that the result of his trial would have been different had counsel objected. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 404.)

51

As the circuit court noted, in Wilson's direct appeal, Wilson raised several arguments concerning the trial court's jury instructions. As to Wilson's argument that the trial court failed to "instruct the jury that it had to unanimously find that he committed the capital offense" and "had to find that he intentionally killed two of the decedents," this Court explained:

> "The trial court's instruction on the capital offense was almost identical to the pattern jury instruction on the capital murder of two or more people pursuant to a single scheme or course of conduct. 'A trial court's following of an accepted pattern jury instruction weighs heavily against any finding of plain error.' Price v. State, 725 So. 2d 1003, 1058 (Ala. Cr. App. 1997), aff'd, 725 So. 2d 1063 (Ala. 1998), cert. denied, 526 U.S. 1133, 119 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999). Also, the trial court thoroughly instructed the jury on principles of complicity or accomplice liability. Finally, from the verdict forms, it is clear that the jurors unanimously agreed that the appellant was responsible for the murders of all four of the decedents. Accordingly, we do not find any plain error in this instance."

Wilson, 777 So. 2d at 885 (emphasis added). As to his argument that the trial court failed to "properly instruct the jury that he had to have the specific intent to kill at least two of the decedents to be found guilty of the capital offense" and that it "did not instruct the jury on the particularized intent necessary to support a capital murder conviction," this Court explained:

"The record refutes these arguments. During its oral charge, the trial court specifically instructed the jury on intent with regard to each decedent and explained that that intent must be a particularized intent to kill. When read in conjunction with the trial court's instructions on complicity or accomplice liability, the trial court sufficiently instructed the jury on intent. Therefore, the appellant's argument is without merit."

Wilson, 777 So. 2d at 885. As to his argument that the trial court did not properly instruct the jury "on intentional murder because it stated that intentional murder 'is the death of one individual'" and, thus, it "prevented the jury from finding that he intentionally killed more than one of the decedents but that the killings did not occur as part of one scheme or course of conduct," this Court explained:

"In instructing the jury on intentional murder, the trial court substantially followed the pattern jury instruction on intentional murder. As stated above, the trial court also substantially followed the pattern jury instruction for the capital murder of two or more people pursuant to a single scheme or course of conduct. These facts weigh heavily against a finding of plain error. See Price, [725 So. 2d at 1058]. Moreover, the phrase 'single scheme or course of conduct' was not so technical that the jurors could not use their common sense to interpret and understand it. As we stated in Roberts v. State, 735 So. 2d 1244, 1252 (Ala. Cr. App. 1997):

"'The word "intent" is not a term of art or legal jargon. It is a commonly used and understood word with a clear meaning. Moreover, as the United States Supreme Court has recognized:

53

"'"Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."

"'Boyde v. California, 494 U.S. 370, 380-81, 110 S. Ct. 1190, 1198, 108 L. Ed. 2d 316 (1990).

"'In this case, the jurors' common sense understanding was sufficient; the court was not required to define the term. No plain error occurred. See Williams v. State, 710 So. 2d 1276 (Ala. Cr. App. 1996).'

"Finally, as stated in Part I of this opinion, under the facts of this case, there was simply no rational basis for a finding that the appellant intentionally murdered more than one of the decedents, but that he was not guilty of the capital offense. Therefore, the appellant's arguments are without merit.

Wilson, 777 So. 2d at 886.

Although Wilson bootstrapped each of these substantive jury-instruction arguments to claims in his Rule 32 petition that his counsel were ineffective, Wilson failed to plead sufficient facts to show that he

54

was entitled to any relief on this claim. Indeed, as the circuit court correctly found when it summarily dismissed this claim of ineffective assistance of counsel, Wilson "cites no facts to establish how he was prejudiced by his counsel's failure to object, nor does he cite facts establishing a reasonable probability that the result of his trial would have been different had counsel objected." (C. 404.) Thus, the circuit court did not err when it summarily dismissed his claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.7

Wilson also argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were "ineffective for failing to adequately object or provide authority opposing the admission of highly prejudicial photographs that served only to inflame the passions of the jury." (Wilson's brief, p. 18.)

In his initial petition, Wilson alleged that his counsel were ineffective for failing to "adequately object or provide authority in opposition to the trial court's admission of highly prejudicial photographs which had no purpose but to inflame the passions of the jury." (Supp. C. 48.) Wilson also raised a substantive claim addressing the trial court's

admission of those photographs, which he incorporated by reference in his claim of ineffective assistance of counsel. In his substantive claim, Wilson alleged that he "sought to have prejudicial and inflammatory photographs properly barred from his trial, and he repeatedly objected to the State's use of gory autopsy and crime scene photographs." (Supp. C. 96.)

The circuit court summarily dismissed both claims, finding:

"Wilson claims that admission into evidence of gory autopsy and crime scene photographs 'served little or no purpose except to arouse the passion, prejudice, or sympathy of the jury.'

"This issue was raised on appeal. The Court concluded that each photograph admitted was relevant to show the crime scene and injuries each victim suffered, and found no error in their admission. Wilson, 777 So. 2d at 929.

"Because this issue was raised on appeal, it is precluded from further review pursuant to Rule 32.2(4). This claim is dismissed.

"Counsel's failure to object to admission of the photographs described above forms the basis for Wilson's [ineffective-assistance-of-counsel] claim .... Wilson pleads no facts showing how he was prejudiced by counsel's failure to object, and pleads no facts showing a reasonable probability that the result of his trial would have been different had counsel objected. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 416.)

As the circuit court correctly noted in dismissing Wilson's substantive claim, in Wilson's direct appeal this Court addressed his argument that the "trial court erroneously admitted photographs that served only to inflame the passions of the jury." Wilson, 777 So. 2d at 928. This Court rejected Wilson's argument, holding that, "[a]fter reviewing the photographs that were admitted into evidence in this case, we conclude that they were relevant to show the crime scene and the injuries each victim suffered. Therefore, the trial court did not err in admitting them into evidence." Wilson, 777 So. 2d at 929.

Because this Court in Wilson's direct appeal held that the substantive claim underlying Wilson's assertion of ineffective assistance of counsel is without merit, his allegation that his counsel were ineffective for failing to object to the admission of the photographs fails. See Carruth, supra. Thus, the circuit court did not err when it summarily dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.8

Wilson argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective "for failing to retain

any forensic experts to help investigate the evidence brought against him, and to assist them in their representation." (Wilson's brief, p. 20.) Wilson's argument is without merit.

In his initial petition, Wilson alleged that his trial counsel were ineffective for failing to "obtain expert assistance" to "examine the State's forensic evidence and review the planned testimony of State experts." (Supp. C. 38.) According to Wilson, if his counsel had retained expert assistance, they would have "uncovered numerous examples of unprofessional, unreliable, and untrustworthy forensic investigation." (Supp. C. 38.) In his petition, however, Wilson did not identify by name any expert witness his counsel should have hired.

> "'When addressing a similar claim that counsel was ineffective for failing to secure the presence of an expert, this Court in Daniel v. State, 86 So. 3d 405 (Ala. Crim. App.2011), stated:
>
>> "'"Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel's trial or the content of the expert's expected testimony. Accordingly, Daniel failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R. Crim. P. See McNabb v. State, 991 So. 2d 313 (Ala. Crim. App. 2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently

pleaded because expert was not identified); Woods v. State, 957 So. 2d 492 (Ala. Crim. App. 2004), rev'd on other grounds, 957 So. 2d 533 (Ala. 2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name)."

"'86 So. 3d at 425-26. As we stated previously, to sufficiently plead a claim that counsel was ineffective in failing to secure the services of an expert, the petitioner must identify the expert by name and plead his/her expected testimony.'

"Woods v. State, 221 So. 3d 1125, 1138-39 (Ala. Crim. App. 2016)."

Brooks v. State, 340 So. 3d 410, 458 (Ala. Crim. App. 2020) (emphasis added).

Because, as the circuit court correctly found in its order dismissing this claim, "Wilson fail[ed] to identify what experts counsel should have retained" (C. 427), the circuit court did not err when it dismissed this claim as insufficiently pleaded.

Accordingly, Wilson is due no relief on this claim.

### I.A.9

Wilson similarly argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective for

59

failing "to obtain[] the assistance of an independent mental health expert to evaluate [him] for evidence relevant to theories of guilt." (Wilson's brief, p. 23.) But Wilson did not identify by name any mental-health expert whom his counsel should have hired to evaluate him. (See Supp. C. 39.) Because, as the circuit court correctly found in its order dismissing this claim that "Wilson [did] not identify who should have been retained" (C. 428), the circuit court did not err when it dismissed this claim as insufficiently pleaded. See Brooks, supra.

Accordingly, Wilson is due no relief on this claim.

## I.A.10

Wilson also argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective "for failing to meaningfully cross-examine witnesses." (Wilson's brief, p. 23.) Specifically, Wilson argues that his counsel were ineffective in their cross-examination of the State's expert witnesses, in their cross-examination of Ashley Rutherford, and in their cross-examination of witnesses who provided informant testimony. Wilson's arguments are without merit.

In his petition, Wilson alleged that his counsel were ineffective in their cross-examination of the State's expert witnesses because, he says, their

"failure to obtain expert assistance resulted in particularly ineffective cross examination of the three expert witnesses called by the state, Dr. Kenneth Warner, a Medical Pathologist from the Alabama Department of Forensic Science[s] (R. 1129), Morris G. Brown, Jr., a toolmarks expert from the Department of Forensic Science[s] (R. 1201), and Brent Wheeler, a trace evidence and firearms expert who is the Director of the Department of Forensic Services in Huntsville (R. 1282.) With the aid of expert assistance, cross examination of these witnesses would have revealed the substantial flaws and weaknesses of these witnesses' testimony."

(Supp. C. 42-43.) Wilson further alleged that his counsel were "egregiously ineffective during the cross examination of [Ashley] Rutherford" because,

"through his own questions, defense counsel elicited testimony of prior bad acts, including that Mr. Wilson had previously sold drugs to Rutherford (R. 1057), and that, in Rutherford's opinion, Mr. Wilson was responsible for Rutherford's addiction to cocaine. (R. 1068.) This evidence was irrelevant to any aspect of the trial and had an extraordinary tendency to bias the minds of the jurors against Mr. Wilson."

(Supp. C. 43.) Finally, Wilson alleged that his counsel "failed to effectively cross examine witnesses who provided informant testimony to

61

the state in exchange for consideration in their own criminal cases"

because his counsel

> "did not adequately impeach those witnesses with their own criminal histories or attack the biases of these witnesses. Counsel also did not make effective use of impeachment information it gained from third parties. (R. 63, 72, 83-84.) Defense counsel's failure to engage in effective cross examination of all the state's witnesses violated Mr. Wilson's right to confront the witnesses against him and resulted in his conviction and sentence of death."

(Supp. C. 43.)

The circuit court summarily dismissed Wilson's claim that his counsel were ineffective in their cross-examination of the State's expert witnesses as insufficiently pleaded and found as follows:

> "The petition fails to specify what questions should have been asked on cross-examination. The responses that those questions would have elicited is also absent. The 'substantial flaws and weaknesses of the witnesses' testimony' are not specified. Wilson fails to plead facts showing how he was prejudiced, and fails to plead facts showing a reasonable probability that the result of his trial would have been different had counsel cross-examined these witnesses differently."

(C. 433-34.) We agree with the circuit court's judgment.

In Stanley v. State, 335 So. 3d 1, 21 (Ala. Crim. App. 2020), this Court addressed a similar claim alleging that trial counsel was ineffective for failing to adequately cross-examine a State's witness. The

62

circuit court in Stanley, just as the circuit court did here, found that Stanley's claim was insufficiently pleaded in part because Stanley failed to plead facts showing what the answers to the unasked questions would have been had his counsel asked those questions on cross-examination. This Court agreed with the circuit court's judgment and affirmed its conclusion that Stanley's claim was insufficiently pleaded.

Here, Wilson not only failed to allege what answers the State's expert witnesses would have given had counsel cross-examined them differently, Wilson also failed to allege what questions his counsel should have asked to those expert witnesses. And to the extent that Wilson alleged that his counsel were ineffective for failing to retain expert assistance to aid in questioning the State's expert witnesses, Wilson did not identify by name any expert his counsel should have hired. Thus, the circuit court properly found that Wilson's claim was insufficiently pleaded.

Next, the circuit court summarily dismissed Wilson's claim that his counsel were "egregiously ineffective" in their cross-examination of Rutherford as follows:

> "The evidence at trial established that Ashley Rutherford was shot in the head by Nick Acklin, not Joey

63

Wilson. Rutherford nevertheless gave damaging testimony against Wilson, repeatedly testifying that Wilson was the 'ringleader' that evening. Taking into consideration all of Rutherford's testimony, this Court concludes that counsel introduced the subject of drug use -- Rutherford's as well as Wilson's -- to show Rutherford's bias against Wilson. When asked by the prosecutor about his previous relationship with Wilson, Rutherford testified as follows:

"' Q. (Mr. Taylor) How long have you known Joey Wilson?

"'A. (Mr. Rutherford) About a year and a half.

"'Q. (Mr. Taylor) And when you say a year and a half are you referring to a year and a half before this event?

"'A. (Mr. Rutherford) Yes, sir.

"'Q. (Mr. Taylor) Before September, before the killings?

"'A. (Mr. Rutherford) About a year and a half.

"'Q. (Mr. Taylor) Describe to this jury what kind of social, or professional if it was, contact that you had with Joey Wilson. How was it that you came to meet Joey Wilson?

"'A. (Mr. Rutherford) Just social.

"'Q. (Mr. Taylor) Would there be social gatherings where you would come in contact with the defendant, Joey Wilson?

"'A. (Mr. Rutherford) Yes, sir.

64

"'Q. (Mr. Taylor) What is your best estimate, as far as how often he would see Joey Wilson in that year and a half leading up to the killings?

"'A. (Mr. Rutherford) Almost every day.

"'Q. (Mr. Taylor) All right. What was your relationship with Joey -- I am talking about good or bad -- for the most part?

"'A. (Mr. Rutherford) I guess you would say in between.

"(R. 989-990).

"Clearly, the direct examination of Rutherford would lead one to believe that he and Wilson were friends who saw each other 'almost every day' in the year and a half before the shootings.

"The record further reveals that Wilson's trial counsel performed a thorough and exhaustive cross-examination of Rutherford, and one of his main goals was to demonstrate that the picture painted by Rutherford about his relationship with Wilson was false. Toward that end, the following exchanges occurred:

"A. (Mr. Rutherford) The last question you asked me, you are talking about -- what time frame are you talking about? <u>I had not talked to Joey for about six months</u>.

"Q. (Mr. Gladden [(defense counsel)]): I am talking about the year or year and a half that you knew him.

"'A. (Mr. Rutherford): That I knew him. Okay. From April and May I had no contact with him. I had not gone to his house, I had not done nothing.

"(R. 1054) (emphasis added)

"....

"'Q. (Mr. Gladden): Okay. About a week before the 25th they had come by, and as I am understanding you, to buy some drugs from you?

"'A. (Mr. Rutherford) Yes -- well, I didn't know why they were coming over there. That's what they ended up talking about.

"'Q. (Mr. Gladden): And you had some there for sale?

"'A. (Mr. Rutherford) Not me, no sir.

"'Q. (Mr. Gladden) Not you?

"'A. (Mr. Rutherford) No, sir.

"'Q. (Mr. Gladden) Your house?

"'A. (Mr. Rutherford) Yes, sir.

"'Q. (Mr. Gladden): Somebody else that sold out of your house?

"'A. (Mr. Rutherford) No, it wasn't -- I mean, they weren't constantly selling out of my house. It wasn't a constant thing, no sir. We just happened to have an ounce -- well, we ended up having three-fourths of an ounce at that time.

"'Q. (Mr. Gladden) Kept in your house?

"'A. (Mr. Rutherford) No. He had just gotten it the day before.

"'Q. (Mr. Gladden) What about yourself?

"'A. (Mr. Rutherford) I didn't have any.

"'Q. (Mr. Gladden) I'm sorry. You have lost me again, I thought you said you each had an ounce or three-fourths of an ounce?

"'A. (Mr. Rutherford) No, no. I said we had gotten an ounce, and there was only three-quarter left.

"'Q. (Mr. Gladden) Okay. I'm with you now. What had you done with the remainder? Had it been sold or used?

"'A. (Mr. Rutherford) Smoked.

"'Q. (Mr. Gladden) Smoked?

"'A. (Mr. Rutherford) Yes.

"'Q. (Mr. Gladden): Now, you also grew some marijuana there at your house, did you not?

"'A. (Mr. Rutherford) Yes, sir.

"'Q. (Mr. Gladden) So would it be a correct and fair statement to say that during the time that you knew or had an acquaintance with Joey, you would buy drugs from him, he would buy drugs from you?

"'A. (Mr. Rutherford) He didn't buy any from me. I bought it from him.

"(R. 1055-57).

"....

"'Q. (Mr. Gladden) Now, you had become about six months prior to that I guess extremely upset with Joey, hadn't you?

"'A. (Mr. Rutherford) Yes, sir.

"'Q. (Mr. Gladden) He had refused to deal with you anymore because you had developed a bad cocaine problem, hadn't you?

"'A. (Mr. Rutherford) No sir. Well, I had developed a cocaine habit, but it was introduced to me by him.

"'Q. (Mr. Gladden) But you had developed it and he just didn't want to deal with you anymore isn't that the truth?

"'A. (Mr. Rutherford): I don't know about not wanting to deal with me.

"'Q. (Mr. Gladden) Well, he quit dealing with you, didn't he?

"'A. (Mr. Rutherford): I quit dealing with him.

"'Q. (Mr. Gladden): All right. And that's what happened about six months prior to the 25th of September?

"'A. (Mr. Rutherford) Yes, sir.

"'Q. (Mr. Gladden) Now, is that the reason or one of the reasons that everything that occurred the week before and on September 25th that you specifically said Joey Wilson and nobody else?

"'A. (Mr. Rutherford) No, sir.

"(R. 1068-69).

"During his cross examination, counsel used the foregoing to attack Rutherford's account of Wilson's involvement. Regarding the stolen cell phone that precipitated the murders, he got Rutherford to admit that he named only Wilson in his report to law enforcement, even though others were present, and he never saw Wilson take the phone. (R. 1061) He got Rutherford to concede that when he initially spoke with Officer Salmonsky, he named only Joey Wilson as the perpetrator even though he knew 'without a doubt' that Acklin, not Wilson, shot him in the head. (R. 1062). When Rutherford said that he made that statement because Wilson was the 'ringleader,' [Wilson's trial counsel] first got him to admit that he learned that term from the District Attorney's office and the Sheriffs Department, (R. 1063), then obtained the following admission:

"'Q. (Mr. Gladden): Mr. Rutherford, isn't it true that Nick Acklin was the one that as the actual shooting started was telling everybody what to do, was telling somebody to go start the car, was telling that there ain't going to be nobody to leave here, right before he shot you in the head. Isn't that the case?

"'A. (Mr. Rutherford) And also --

"'Q. (Mr. Gladden) Isn't that correct? Yes or no.

"'A. (Mr. Rutherford) Yes, sir.'

69

"(R. 1065).

"Based upon the foregoing, this Court finds that a reasonable lawyer could have concluded that any potential risk in mentioning Wilson's drug use was worth presenting to the jury, especially since Rutherford admitted his drug use as well, and especially in light of Wilson's defense strategy that he only shot one person, preventing the crime from being elevated to capital murder. In fact, given the facts Gladden had to work with, one wonders whether Gladden's performance would have been considered deficient had he <u>not</u> introduced evidence of Rutherford's bias against Wilson. Gladden's cross-examination could have given the jury reason to believe that Rutherford was attempting to color his testimony in an effort to obtain a capital murder conviction against Wilson based on the fact that Wilson quit dealing drugs to Rutherford or based on the fact that Wilson introduced Rutherford to cocaine, to which he became addicted. In fact, in his closing argument, Gladden argued:

> "'I think it's pretty obvious that Ashley Rutherford hated Joey Wilson's guts from a long time back, but they still spoke, they still interacted. Why would Ashley Rutherford, knowing full well that Nick Acklin just put a gun to his head and pulled the trigger, and seeing nothing else that went on, upon his first contact with law enforcement he said, "Joey Wilson did it." Now does that not say that somebody has started out to make sure that no matter what the facts are, Joey Wilson is going to suffer the consequences for it all? I think that's as clear a statement of that as you can find, or that you will ever be able to find. He sat right up here and told you that's exactly what he did, knowing full well that otherwise Nick Acklin shot him.'

"(R. 1574).

70

" In any event, Wilson has failed to plead facts showing how he was prejudiced by Gladden's cross-examination of Rutherford, and has failed to plead facts showing a reasonable probability that the result of his trial would have been different if Gladden has cross-examined Rutherford differently. Because this claim is insufficiently pleaded it is dismissed pursuant to Rule 32.6(b) Ala. R. Crim. P., and because it fails to state a claim upon which relief may be granted pursuant to Rule 32.7(d), Ala. R. Crim. P."

(C. 434-39 (footnote omitted).) We agree with the circuit court's judgment.

Indeed, this Court has held:

"'"[D]ecisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics." Rose v. State, 258 Ga. App. 232, 236, 573 S.E.2d 465, 469 (2002). "'"[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature."'" Hunt v. State, 940 So. 2d 1041, 1065 (Ala. Crim. App. 2005), quoting Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 515 (S.D.N.Y. 2005), quoting in turn, United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). "The decision whether to cross-examine a witness is [a] matter of trial strategy." People v. Leeper, 317 Ill. App. 3d 475, 483, 251 Ill. Dec. 202, 209, 740 N.E.2d 32, 39 (2000).'

"A.G. v. State, 989 So. 2d 1167, 1173 (Ala. Crim. App. 2007). '"[T]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel."' Bonner v. State, 308 Ga. App. 827, 828, 709

71

S.E.2d 358, 360 (2011) (quoting <u>Cooper v. State</u>, 281 Ga. 760, 762, 642 S.E.2d 817, 820 (2007))."

<u>Stanley v. State</u>, 335 So. 3d 1, 37 (Ala. Crim. App. 2020).

Here, as the circuit court found, Wilson's trial counsel's cross-examination of Rutherford was based on his decision to show Rutherford's bias against Wilson even though the testimony involved prior bad acts of both Rutherford and Wilson. Although Wilson's Rule 32 counsel disagrees with Wilson's trial counsel's strategy and would have cross-examined Rutherford differently, Wilson's trial counsel was not constitutionally ineffective in his cross-examination of Rutherford. Additionally, as the circuit court correctly found, Wilson failed to plead sufficient facts showing how he was prejudiced by his counsel's allegedly deficient performance. At most, Wilson pleaded a conclusory allegation of prejudice, which does not satisfy Wilson's burden of pleading a claim of ineffective assistance of counsel. <u>See</u> <u>Mashburn v. State</u>, 148 So. 3d 1094, 1107 (Ala. Crim. App. 2013) (holding that a bare allegation of prejudice is insufficient to satisfy the pleading requirement for a claim of ineffective assistance of counsel). Thus, the circuit court properly dismissed this claim.

Finally, the circuit court summarily dismissed Wilson's claim that his counsel were ineffective in their cross-examination of the State's informant witnesses as follows:

> "Wilson next argues that trial counsel was ineffective for failing to effectively cross-examine witnesses who provided informant testimony in exchange for consideration of their own criminal cases. He argues that counsel did not adequately impeach those witnesses with their own criminal histories or attack the bias of those witnesses. Neither these witnesses nor the criminal history and bias that could have been used to impeach them is specified in the petition. Wilson's citations to the record in support of this claim mention only two individuals, Greg Tribble and Travis Hatfield. Those individuals did not testify, so Gladden did not have the opportunity to cross-examine them. This claim is therefore dismissed for failure to state a claim upon which relief can be granted. Rule 32.7(d), Ala. R. Crim. P."

(C. 440.) We agree with the circuit court's judgment.

Again, Wilson failed to plead sufficient facts to support his allegation of ineffective assistance of counsel. As the circuit court pointed out, although Wilson alleged that his counsel did not impeach those unnamed witnesses with their criminal histories or attack their biases, Wilson did not set out any facts showing what those biases or criminal histories were. Nor did Wilson allege any facts establishing that he was prejudiced by his counsel's alleged deficiencies. Furthermore, as the circuit court also pointed out, the only named informant witnesses that

73

could be deciphered from examining Wilson's citations to the record in his petition were Greg Tribble and Travis Hatfield, neither of whom testified at Wilson's trial; therefore, Wilson's trial counsel had no opportunity to cross-examine or impeach those witnesses. Thus, Wilson's claim was both insufficiently pleaded and without merit.

Accordingly, Wilson is due no relief on this claim.

### I.A.11

Wilson next argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were ineffective when they "failed to effectively advocate for a jury instruction on the lesser-included offense of felony murder, because, when asked, trial counsel could not provide a rational basis for the instruction." (Wilson's brief, p. 29.) Wilson's argument is without merit.

In his direct appeal, Wilson argued that the "trial court erred in not instructing the jury on the lesser included offense of felony murder." Wilson, 777 So. 2d at 876. This Court recognized that Wilson's counsel "requested that the trial court instruct the jury on felony murder" but "did not object when the trial court refused to do so." We reviewed Wilson's argument for plain error and determined "that an instruction on

felony murder would not be appropriate." Id.  This Court, after defining

felony murder, held as follows:

> "[T]he offense of felony murder involves an intended felony and an unintended homicide.  See Williams v. State, 601 So. 2d 1062 (Ala. Cr. App. 1991), aff'd, 662 So. 2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S. Ct. 417, 121 L. Ed. 2d 340 (1992). Finally, with regard to instructions on lesser included offenses, § 13A-1-9(b), Ala. Code 1975, provides: 'The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'  (Emphasis added.)
>
> "[Wilson] argues that, without an instruction on felony murder, 'there was no way that the jury could reconcile convicting [him] of one intentional murder, two attempted murders, and still hold him accountable for the remaining three homicides.' (Appellant's brief at p. 4.)  Under his theory that he shot only one victim, if he were not found to be an accomplice, he would not be responsible for the attempted murders of Rutherford or Hayden.  Continuing under that theory, there was no felony upon which to base a felony murder conviction.  Therefore, his argument is flawed. Furthermore, although the appellant argues that he intentionally killed only one person, the jury found that he was responsible, as an accomplice, for killing the other three decedents.  The evidence in this case was overwhelming and amply supported the jury's conclusion.  Accordingly, under the facts of this case, there was no rational basis for a verdict convicting [Wilson] of felony murder, and the trial court's refusal to give such an instruction did not rise to the level of plain error."

Wilson, 777 So. 2d at 877.

In his petition, Wilson bootstrapped the substantive claim he raised in his direct appeal to a claim of ineffective assistance of counsel, alleging that "a felony murder [instruction] was warranted under the circumstances of the case." (Supp. C. 44.) According to Wilson, "the State's own theory of the case" was that Wilson "was committing the crimes of kidnapping in the first degree, burglary in the first degree, and other felonies clearly dangerous to human life at the time that Nicholas Acklin, another participant in the crime, caused the death of the first victim."[4] (Supp. C. 44.) Wilson further alleged that the "State's theory" of the case against him was that Wilson "and his co-defendants imprisoned the victims for over an hour for the purpose of retaliating against one of the victims for filing a criminal complaint against Mr. Wilson for the theft of a cellular telephone" and that the "victims were

_____

[4]In his brief on appeal, Wilson argues that "[t]he jury found [him] guilty of committing felonies -- kidnapping and burglary -- based on the state's contention he forcibly detained the victims in a dwelling to terrorize them and interfere with their reporting of criminal activity." (Wilson's brief, pp. 32-33.) As the State points out in its brief on appeal, however, Wilson is incorrect because, "[w]hile [he] was initially charged in count 2 of the indictment with murder during burglary, that charge was dismissed by the State before the jury began its guilt-phase deliberations" and "Wilson was never indicted for, much less found guilty of, kidnapping." (State's brief, p. 46.)

assaulted, threatened, and forced to promise that they would withdraw the criminal complaint during the course of the incident," which, he said, established first-degree kidnapping. Wilson also claimed that "[t]he facts of this offense, under the State's theory, supported Burglary, and hence a felony murder instruction." (Supp. C. 45.) Finally, Wilson alleged that "other felonies 'clearly dangerous to human life' are implicated by the State's theory of the case," including "attempted murder" and "intimidating a witness." (Supp. C. 45.) Wilson said that "[t]hese underlying felonies supported a felony murder instruction, for if the jury concluded that [he] didn't have the requisite intent to kill, but did commit the felonies, a felony murder instruction would have been the proper verdict." (Supp. C. 46.)

The circuit court summarily dismissed Wilson's claim (along with his substantive claim about the trial court's failure to instruct the jury on the lesser-included offense of felony murder), as follows:

> "This issue was addressed both at trial and on appeal. As noted in the decision of the Court of Criminal Appeals affirming defendant's conviction and sentence, trial counsel requested that the court instruct the jury on the lesser offense of felony murder, but did not object when the trial court refused to do so. The appellate court nevertheless reviewed the claim for plain error and concluded:

77

"'The evidence in this case was overwhelming and amply supported the jury's conclusion. Accordingly, under the facts of this case, there was no rational basis for a verdict convicting the appellant of felony murder, and the trial court's refusal to give such an instruction did not rise to the level of plain error.'

"Wilson, 777 So. 2d at 877.

"Because this issue was raised on appeal, further review is precluded. This claim is dismissed. Rule 32.7(d) Ala. R. Crim. P.

"This issue also forms the basis of Wilson's [ineffective-assistance-of-counsel] claim .... He claims that trial counsel failed to 'effectively advocate' for a felony murder jury instruction. This claim is belied by the record, which establishes that counsel did advocate for felony murder charge, but ultimately agreed with Judge Fay that there was no basis for the charge. (R. 1491-1505). In any event, Wilson did not allege facts in support of his claim of prejudice, nor facts to establish a reasonable probability that the result would have been different had counsel objected. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 401-02.) We agree with the circuit court's judgment.

Indeed, as this Court explained in Wilson's direct appeal, the jury found that Wilson intentionally killed one person himself and was an accomplice to the killing of three other people; thus, Wilson had the specific intent to kill four people. So, even if this Court assumed that Wilson's argument that there were predicate felonies on which to base a

78

felony-murder instruction was true, there was no rational basis, based on the evidence at Wilson's trial, to show that the four deaths in this case were <u>unintended</u>. Wilson's failure to plead facts showing that there was a rational basis to conclude that the deaths in this case were unintended is fatal to his claim that his counsel were ineffective for failing to secure a felony-murder instruction.[5] Although Wilson pleaded facts showing why he believed there existed underlying felonies on which to base a felony-murder instruction, Wilson did not plead any facts to show that any of the deaths were unintended by him. Additionally, Wilson failed to plead facts showing that he was prejudiced by his counsel's alleged deficient performance because, as this Court noted in his direct appeal, "[t]he evidence in this case was overwhelming" and, "under the facts of this case, there was no rational basis for a verdict convicting [Wilson] of felony murder." Thus, the circuit court did not err when it summarily dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

---

[5]As the circuit court pointed out when it dismissed this claim, Wilson's counsel did ask the trial court to instruct the jury on felony murder but ultimately agreed with the trial court that no such instruction was warranted on the facts of Wilson's case.

## I.A.12

Wilson argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective "for failing to call crucial impeachment witnesses."[6]  (Wilson's brief, p. 33.)  Wilson's argument is without merit.

In his petition, Wilson alleged that his counsel were "ineffective for not calling witnesses to impeach the use of informant testimony by the state." (Supp. C. 46.)  Wilson claimed that,

> "[d]uring the trial, the state called three 'jailhouse informant witnesses, Khristian Ashby, David Newby, and Brian Harris, whose testimony was motivated by the promise of or hope for consideration in their own criminal cases.  (R. 936, 1180, 1397.)  Counsel was ineffective to not impeach these witnesses with their records and the nature of the deals each was offered.  Additionally, the defense had knowledge that the state was soliciting testimony from other potential witnesses,

---

[6]In his brief on appeal, Wilson argues in passing that his trial counsel "failed to make or preserve proper objections or seek to limit" testimony, he says, was "irrelevant and highly prejudicial," "including that Ashby had purchased drugs from Mr. Wilson, sold drugs for Mr. Wilson, and previously heard Mr. Wilson refer to killing someone." (Wilson's brief, p. 34.)  Wilson waived review of this claim on appeal because he failed to provide any legal authority in support of his proposition that the testimony in question was inadmissible even if a proper objection had been made.  See Rule 28(a)(1), Ala. R. App. P.  Even so, Wilson also failed to plead in his petition, or specifically argue on appeal, what objections should have been made.  Thus, this claim was properly summarily dismissed because it was insufficiently pleaded in his petition.

using coercion and promises, but which did not result in trial testimony. The state entered an undisclosed written agreement for testimony with Greg Tribble (R. 63), without subsequently calling him for trial, and Travis Hatfield had been threatened with being sent to jail on a possession charge if he didn't testify in a certain way against Mr. Wilson. (R. 72, 83-84.) Based on this information, defense counsel represented that it was necessary to call one of the prosecutors as a witness to these activities. (R. 64.) Defense counsel was ineffective to not expose these highly improper techniques employed by the state, and indeed did not follow up on these leads or present any of this evidence at trial."

(Supp. C. 46.)

The circuit court dismissed Wilson's claim that his counsel were ineffective for failing to call witnesses to impeach Khristian Ashby, David Newby, and Brian Harris as insufficiently pleaded because Wilson failed "to name a single witness who was available for such testimony, or how that witness would have had personal knowledge necessary to impeach. Further, his petition is silent as to why no reasonable lawyer would have failed to discover and call such an unnamed witness to testify." (C. 441.) We agree with the circuit court's judgment. This Court has consistently held that, to sufficiently plead a claim that counsel were ineffective for failing to call witnesses to testify, the petitioner must identify by name the witnesses his or her counsel should have called to testify, what the content of their testimony would have been, and that the witnesses were

willing and able to testify. Because Wilson failed to sufficiently plead his claim, the circuit court did not err when it summarily dismissed it.

The circuit court also dismissed Wilson's claim because it found that, contrary to Wilson's allegations, his trial counsel "did impeach the State's use of informant testimony" and that his counsel's "cross-examination of the informant witnesses was reasonable." (C. 442.) Specifically, the circuit court found:

> "The record shows that Gladden [-- Wilson's defense counsel --] cross-examined each of these witnesses about deals they may have made with the State. In Gladden's cross-examination of Brian Harris, he elicited information to show that Harris' bond had been reduced from an original amount of $200,000 to $10,000. (R. 1406-07). Similarly damaging cross-examination was conducted on Khristian Ashby (R. 945-52, 954-72), and David Newby (R. 1187-1196, 1199). In fact, during his closing argument in the guilt phase, Gladden capitalized on these witnesses by arguing the following:

>> "'Now, you have Joey Wilson up here in the Madison County Jail charged with capital murder. What happens? Have you ever been to Baskin Robbin? You walk in and take a number and you wait to be served. Well, folks, there is a Baskin Robbins alive and well in the Madison County Jail. You get somebody that is charged with a crime, especially something along this line, you get 24 other men in their cell with them, and no telling how many hundreds in the rest of the jail, and see how many witnesses you come up with. I've got number one. Number one being served now. Do

you want to testify against Joey Wilson? Oh, yes. I would like vanilla. Listen to the testimony.

> "'They come up here and they tell you that they don't expect anything out of these people. No promises. I'm just going to do this because I want to, because I'm a good citizen. Then listen to the testimony as they -- first off, the Judge is going to tell you and give you an instruction about the testimony of persons that have been convicted of crimes. I want you to listen really closely when he does. ... Secondly, I want you to please use your common sense as to what these so-called witnesses have to say and why they have to say it, why the[y] would say it.'

"(R. 1585-87).

"Gladden's closing argument continued to attack the credibility of these witnesses, based on his cross-examination:

> "'I believe you also heard a little testimony out of Brian Harris. ... He said Joey was up there [in jail] trying to sound like a big guy. A lot of people do that when they get in jail. A lot of people do that.

> "'Now, David Newby, when I asked him a simple question had he ever sold drugs before? He said no. Then when I showed him his statement where it said he had sold some drugs before -- do you remember me asking him, "Did you just lie to this jury?" "Yes, I did" .... He had said "No, I've never sold drugs." Look at this statement where it says he has sold drugs.

> "'Brian Harris, he has got no problem. All he is looking at is probably getting out of a life

83

sentence on his second or third drug conviction for any of his testimony that he might give in this case here today, but they didn't promise him anything. That's not going to happen. I guess. Another thing that is amazing to me is how you get a 95% bond reduction, it didn't have a thing to do with this case.'

"(R. 1587-88)."

(C. 441-42.) We agree with the circuit court's judgment.

As explained above, this Court has held that

"'"[t]he method and scope of cross-examination 'is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.'"' <u>Davis v. State</u>, 44 So. 3d 1118, 1135 (Ala. Crim. App. 2009) (quoting <u>State ex rel. Daniel v. Legursky</u>, 195 W. Va. 314, 328, 465 S.E.2d 416, 430 (1995)). '"'[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature.'"' <u>Hunt v. State</u>, 940 So. 2d 1041, 1065 (Ala. Crim. App. 2005) (quoting <u>Rosario-Dominguez v. United States</u>, 353 F. Supp. 2d 500, 515 (S.D.N.Y. 2005), quoting in turn, <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987))."

<u>Bryant v. State</u>, 181 So. 3d 1087, 1162 (Ala. Crim. App. 2011). Although Wilson alleged that his counsel should have impeached Ashby, Newby, and Harris, the circuit court correctly pointed out that his counsel did precisely what Wilson claims they did not do. And although Wilson's Rule 32 counsel would have impeached those witnesses differently, Wilson's trial counsel's impeachment of those witnesses was not

84

constitutionally ineffective. Thus, the circuit court did not err when it summarily dismissed this claim.

Finally, the circuit court dismissed Wilson's claim concerning Tribble and Hatfield as follows:

> "Wilson's final claim in Paragraph 40 relates to the State's investigation of Greg Tribble and Travis Hatfield as potential witnesses. Wilson notes in his petition that neither of these individuals testified at trial. As such, they are no different from any other potential witness that could have been, but was not called, by the State. The record demonstrates that Gladden had uncovered the names of these individuals during his investigation and preparation for trial, and he asked for information necessary to challenge their testimony had they been called. The State's decision not to call them as witnesses in no way implies deficient performance by Gladden. Likewise, because the jury never heard about them or from them, Wilson cannot establish prejudice by the State's involvement with them."

(C. 443.) We agree with the circuit court's judgment.

Indeed, Wilson did not adequately plead how his counsel's performance was in any way deficient for not impeaching witnesses who were not called to testify at his trial. Nor did Wilson plead any facts showing that he was prejudiced by his counsel's alleged deficient performance. Furthermore, to the extent that Wilson's claim could be construed as alleging that his counsel were ineffective for failing to call Tribble and Hatfield to testify to highlight the State's deals with other

witnesses,[7] Wilson failed to allege any facts explaining how calling additional witnesses to highlight "deals" with the State would have impacted the jury's decision in this case when, as the circuit court pointed out, they were well aware of the deals the State had with the other informant witnesses. Moreover, Wilson failed to allege that Tribble and Hatfield were willing and available to testify at Wilson's trial. Thus, the circuit court did not err when it dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.13

Wilson next argues that the circuit court erred when it summarily dismissed his claim that his trial and appellate counsel were ineffective "for failing to raise the pattern of improper peremptory strikes by the Madison County District Attorney's Office, which is a relevant factor in assessing the strength of a defendant's prima facie case against a State's

---

[7]As discussed in the Part II of this opinion addressing Wilson's <u>Brady</u> claim, the State told Wilson's counsel that it never had a deal with Hatfield, and, although it had worked out a deal with Tribble, that deal was rescinded before the trial court issued a discovery order in Wilson's case when Tribble failed to work as a drug informant as he had agreed to do.

racially discriminatory use of peremptory strikes." (Wilson's brief, pp. 35-36.) Wilson's argument is without merit.

In his petition, Wilson alleged that his trial and appellate counsel were ineffective "for failing to raise the fact that there is an apparent pattern in the use of peremptory strikes by the Madison County District Attorney's Office that is a relevant factor to be considered in assessing the strength of the defendant's prima facie case against the State for its discriminatory use of peremptory strikes." (Supp. C. 165.) According to Wilson, the "Madison County District Attorney's Office has been found guilty of violating Batson[ v. Kentucky, 476 U.S. 79 (1986),] and has been accused on several occasions of violating Batson due to its history or striking blacks off the jury venire." (Supp. C. 165.) To support his claim that the Madison County District Attorney had engaged in a pattern of striking black jurors from cases, Wilson cited six opinions of this Court: Moore v. State, 661 So. 2d 770 (Ala. Crim. App. 1995), Baker v. State, 683 So. 2d 1 (Ala. Crim. App. 1996), Bone v. State, 706 So. 2d 1291 (Ala. Crim. App. 1997), Freeman v. State, 586 So. 2d 1013 (Ala. Crim. App. 1991), Click v. State, 695 So. 2d 209 (Ala. Crim. App. 1997), and White v. State, 587 So. 2d 1218 (Ala. Crim. App. 1990). (Supp. C. 165-66.)

The circuit court summarily dismissed Wilson's claim as being insufficiently pleaded and as being without merit, holding:

> "Wilson alleges that trial counsel and appellate counsel were ineffective for failing to argue there was a pattern by the Madison County District Attorneys' Office of improperly using race in striking potential jurors. To support this claim, Wilson cites six appellate cases in which the Madison County DA's office was accused of violating <u>Batson</u>. The Court first notes that only one conviction out of the six cited by Wilson was reversed for a <u>Batson</u> violation. This Court does not find that one <u>Batson</u> violation constitutes a pattern of racial striking.
>
> "In addition, Wilson has failed to plead any facts that, if true, demonstrate how he was prejudiced by trial or appellate counsel's failure to raise this issue. Wilson has identified no black jurors that he claims were stricken in violation of <u>Batson</u>. He fails to plead facts showing a reasonable probability that the outcome of his case would have been different if counsel had argued as he suggests they should have. Because this claim is insufficiently pleaded, and because it lacks merit, it is dismissed."

(C. 465.) We agree with the circuit court's judgment.

The Alabama Supreme Court has held that "a pattern in the use of peremptory strikes" by a district attorney's office to remove black jurors from the venire may be "a relevant factor to be considered ... in assessing the strength of the defendant's prima facie case" under <u>Batson</u>. <u>Ex parte Bird</u>, 594 So. 2d 676, 681 (Ala. 1991) (finding that the fact that judgments in cases tried by the Montgomery County District Attorney's Office had

been reversed on four occasions for violating <u>Batson</u>, coupled with other factors, "supports the defendants' contentions and raises an inference of discriminatory intent"). But Wilson pleaded no facts to establish such a "pattern" by the Madison County District Attorney's Office. Instead, as the circuit court pointed out when it summarily dismissed Wilson's claim, Wilson cited only one case -- <u>Moore v. State</u>, 661 So. 2d 770 (Ala. Crim. App. 1994) -- in which a trial involving the Madison County District Attorney's Office was reversed for violating <u>Batson</u>. One violation of <u>Batson</u> does not establish a "pattern" of discrimination in the Madison County District Attorney's Office. Accordingly, Wilson's trial and appellate counsel were not ineffective for failing to argue that the Madison County District Attorney's Office had a "history" of exercising its peremptory strikes in a discriminatory manner.

Accordingly, Wilson is due no relief on this claim.

## I.A.14

Wilson argues that the circuit court erred when it summarily dismissed his claim that his trial counsel were "ineffective in failing to object to the prosecutor's misconduct in making biblical arguments" and his claim that his "appellate counsel was ineffective for failing to raise

the issue on direct appeal." (Wilson's brief, p. 37.) Wilson's argument is without merit.

In his fourth amended petition, Wilson alleged that his trial and appellate counsel were ineffective "for allowing the State to make the mercy and Biblical arguments, for failing to object to these arguments, for failing to move for a mistrial, and/or failing to ask for limiting instructions from the court, and ... for failing to raise these issues on appeal." (Supp. C. 186.) Wilson also raised a substantive argument that the State improperly "referred to Biblical passages indicating that mercy is out of the question and death is mandatory penalty." (Supp. C. 173.)

The circuit court summarily dismissed Wilson's substantive claim and his claim of ineffective assistance of counsel as follows:

> "Wilson claims that portions of the State's rebuttal closing argument referring to Biblical passages was 'extremely improper.' This substantive claim is procedurally barred for review herein because it could have been but was not addressed at trial. Rule 32.2(a)(3), Ala. R. Crim. P. It is also procedurally barred because it could have been but was not raised at trial or addressed on direct appeal. Rule 32.2(a)(3) and (5), Ala. R. Crim. P.
>
> "Even if this claim were not procedurally barred, Wilson would be entitled to no relief. In furtherance of his plea for mercy, and the pleas for mercy made by Wilson and his father, Gladden [-- Wilson's defense counsel --] made certain Biblical references in his closing argument. The complained-of

90

remarks made by the prosecutor were made in the State's rebuttal to Gladden's argument. It is well settled that 'a prosecutor has a right based on fundamental fairness to reply in kind to the argument of defense counsel.' <u>DeBruce v. State</u>, 651 So. 2d 599, 609 (Ala. Crim. App 1993), aff'd, <u>Ex parte DeBruce</u>, 651 [So. 2d at] 624 (Ala. 1994). Because this claim lacks merit, it is dismissed pursuant to Rule 32.7(d), Ala. R. Crim. P.

"Regarding Wilson's claim that trial and appellate counsel were ineffective for failing to object to the foregoing, he has pleaded no facts establishing a reasonable probability that the result of his trial would have been different had such objections been made. Because it is insufficiently pleaded, this claim is dismissed pursuant to Rule 32.6(b)."

(C. 467-68.) We agree with the circuit court's judgment.

It is well settled that

"'[a] prosecutor has a right to reply in kind to the argument of defense counsel. This "reply-in-kind" doctrine is based on fundamental fairness.' <u>Ballard v. State</u>, 767 So. 2d 1123, 1135 (Ala. Crim. App. 1999). '"When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply."' <u>Davis v. State</u>, 494 So. 2d 851, 855 (Ala. Crim. App. 1986)."

<u>Thompson v. State</u>, 153 So. 3d 84, 174 (Ala. Crim. App. 2012) (footnote omitted). This Court has previously upheld a prosecutor's Biblically based rebuttal argument replying to a defense counsel's argument

appealing to the Bible not to impose the death penalty.[8]  See, e.g., Melson v. State, 775 So. 2d 857, 891-93 (Ala. Crim. App. 1999) ("We find that the prosecutor's comments, when taken in context with the entire closing arguments, were proper as a reply in kind to the Biblical argument made by Melson's counsel during closing argument that no man 'dare judge the life of another.  That's up to God.'").  Here, the comments that Wilson alleges his trial and appellate counsel were ineffective for not objecting to at trial and for not raising as improper on appeal were permissible replies in kind to the arguments Wilson's trial counsel made during his penalty-phase closing argument.

Indeed, during the penalty phase of Wilson's trial, his trial counsel argued to the jury the reasons why, he believed, it should not impose the death penalty in Wilson's case, and then he made the following argument:

_____

[8]In Thompson, this Court noted that " '[a]lthough some states forbid any biblical references in closing arguments -- State v. Berry, 141 S.W. 3d 549 (Tenn. 2004), and Fontenot v. State, 881 P.2d 69 (Okla. Crim. App. 1994) -- Alabama has recognized that "counsel's argument should not be so restricted as to prevent reference, by way of illustration, ... to principles of divine law or biblical teachings," [Ex parte] Waldrop, 459 So. 2d [959] at 963 [(Ala. 1984)].  However, we have also held that the discretion to argue biblical references is not unlimited.'"  153 So. 3d at 174 n. 20 (quoting Gobble v. State, 104 So. 3d 920, 979 (Ala. Crim. App. 2010)).

"I'm sure that some of you commit to some form of Judeo-Christian belief, and if you believe that there is something in any of the writings, including the Bible, that says anything about you must take a life if a life is taken, I submit to you that that is not even the present feeling of the modern Christian churches. I don't think you will find that. An eye for an eye and a tooth for a tooth is distorted. I believe Jesus told you to love one another. I'm not asking you to love anybody. I am asking you not to hate someone or have such feelings toward someone that you will go past that which has to be the ultimate punishment, never seeing the outside of the free world again. While I am on that subject, we are one of the few civilized countries in the world that has a death penalty. Think about that."

(Record in CR-97-2569, R. 1818-19.)

In response to Wilson's counsel's appeal to Scripture to argue that the jury should not impose the death penalty in this case, the State argued the following:

"I submit to you that Joey Wilson does not really know the meaning of the term mercy, until now. Now he has an understanding of mercy and he hopes that you will develop rather quickly here that he understands it, mercy. Not the kind of mercy that was shown to Johnny Couch by him, not the kind of mercy that was shown to Brian Carter by him, not the kind of mercy that was shown to Michelle Hayden Mills by him. Now he wants to talk to you about mercy. He wants to talk to you about forgiveness. He may receive forgiveness from his god at any moment he repents and asks his god for forgiveness. If you believe, you will accept that. However, the State of Alabama is not quite so forgiving. I can't speak for the family. I have come to know them, but I cannot look into their hearts and tell you whether or not they might find deep seated in their Christian beliefs to forgive him. They might

93

and if they do I commend them. But this is not a court of mercy. This is not a court of sympathy. This is a court of law. What we pursue here is not forgiveness and it is not sympathy. We pursue justice.

"Mr. Gladden talks to you about Jesus. Let me tell you what he said. He said you have heard an eye for an eye and a tooth for a tooth. But I say to you if a man slaps one side of your face turn ye therefore the other cheek, or words like that. Now, what the Old Testament required -- he is correct, an eye for an eye and a tooth for a tooth, life for a life, a hand for a hand. That was the Mosaic law in Deuteronomy. It was there, an eye for an eye and a tooth for a tooth. But you know that in that same Levitican cult they did not allow you to convict a man of a capital crime. They did not allow you to put a man to death on the testimony of one witness. You had to have at least two. You have heard both of them. Let me tell you something else. I think you know what the Apostle Paul said in this treatise to the Romans, that they are to be in subjection to the authority, to follow the laws of Rome. Not when in Rome do as the Romans, but to pay tribute, to pay those taxes as they are required by Rome, to be in subjection to the civil authority.

"Now let's move on from the scriptures and get back to this case."

(Record in CR-97-2569, R. 1823-25.) In response to Wilson's counsel's argument that the United States of America is "one of the few civilized countries" that employs a death penalty against people who commit capital murder, the State argued:

"We are told that of all the civilized countries in the world only this one has the death penalty. Ladies and gentlemen, I submit to you that there is not another country

94

in the world and has never been another country in which the people, the citizens, have been provided so much freedom by their government and had so little of it taken away. No country in the history of the world has provided the protection to its citizens and asked so little of them and taken so little from them in their lives, their freedoms. But civilized, how civilized was it in that little room on the 25th of September almost two years ago when these seven young people were treated like they were, and four of them were executed and two of them were shot in a period of 10 to 15 seconds? How civilized was that? Well, that's not representative of our country, is it? Thank God, I hope it's not for things like that to happen. Somebody has to step up and be held accountable for it."

(Record in CR-97-2569, R. 1828-29.) Then the State closed its rebuttal

argument as follows:

"You heard the family that testified. You heard them testify and talked of their loss. They have told you how different it is to lose one by a terminal illness, to lose your father and your mother. You sort of expect that you have to lose them sometime. This is different, ladies and gentlemen, when your young son's life has been terminated at a very early age. That is going to be with them -- it will never be away from them for the rest of their lives. Johnny Couch, a great loss to his family. Michael Beaudette will not make any more coffee for his mother. Lamar Hemphill will never again have the opportunity to do for his family. Brian Carter will never have the opportunity to go to church again. But Joey Wilson wants you to forgive him. Let God and these families worry about forgiveness, ladies and gentlemen.

"....

"It is a difficult process to be involved in. Probably to some of you never have you had to make such a momentous

decision as this. It is important to this side of the room and it is important to that side of the room. I am not talking about sides. I am talking about now accountability, accountability for one's actions. You have gauged the credibility. You have once found him accountable, and in this next stage we look further to accountability. Don't let anyone say to you you are taking his life, as he took the life of someone else. Ladies and gentlemen, you are not going to take his life, whatever you may say, whatever all 12 of you might say. You are doing your duty. The Judge is not going to take his life. If it is taken, it will be taken by the State applying the laws of this State. We will render unto Caesar that which is Caesar's. Does Joey Wilson rate your forgiveness? That's not what you are here for. You are here to render justice. I submit to you that the verdict brought back from your deliberations should be that Joey Wilson should pay the ultimate price and die in the electric chair.

"Now, there has been a lot of talk here about death. We all know something about death, or we all think we know something about death, but to those who have looked in the face of death, those who have stared eyeball to eyeball with it, they have a different understanding of death. I ask that you do your duty and that you will return to this honorable Court a recommendation that Joey Wilson be put to death."

(Record in CR-97-2569, R. 1830-33.)

These complained-of arguments, when viewed in the context of the entire closing statements during Wilson's penalty phase of trial, including his counsel's arguments, were permissible "reply-in-kind" arguments, arguing for justice, and asking the jury to perform its duty, all of which are proper in closing arguments. See Minor v. State, 914 So.

2d 372, 432 (Ala. Crim. App. 2004) ("We agree with the State that there was nothing improper about the prosecutor's remarks. When read in context, it is clear that the prosecutor was making a call for justice and for the jury to perform its duty, both of which are proper subjects of closing argument."). Because the complained-of comments were not impermissible, Wilson's trial and appellate counsel were not ineffective for failing to raise objections and arguments concerning the comments. See Carruth, 165 So. 3d at 645 (recognizing that counsel is "not ineffective for failing to raise a baseless objection). Thus, the circuit court did not err when it dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

### I.A.15

Wilson finally argues that "the cumulative effect of trial and appellate counsel's errors violated [his] constitutional rights." (Wilson's brief, p. 41.) Wilson's argument is without merit.

This Court has previously addressed "cumulative-effect" arguments as follows:

> "'Taylor ... contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529

U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). However, this Court has noted: "Other states and federal courts are not in agreement as to whether the 'cumulative effect' analysis applies to Strickland[ v. Washington, 466 U.S. 668 (1984),] claims"; this Court has also stated: "We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel." Brooks v. State, 929 So. 2d 491, 514 (Ala. Crim. App. 2005), quoted in Scott v. State, [Ms. CR-06-2233, March 26, 2010] [262] So. 3d [1239, 1253] (Ala. Crim. App. 2010); see also McNabb v. State, 991 So. 2d 313, 332 (Ala. Crim. App. 2007); and Hunt v. State, 940 So. 2d 1041, 1071 (Ala. Crim. App. 2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R. Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor's obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.'

"Taylor v. State, 157 So. 3d 131, 140 (Ala. Crim. App. 2010)."

White v. State, 343 So. 3d 1150, 1176 (Ala. Crim. App. 2019). Here, even

"[i]f we were to evaluate the cumulative effect of the instances of alleged

ineffective assistance of counsel, we would find that [Wilson's] substantial rights had not been injuriously affected, because we have found no error in the instances argued in the petition." McNabb v. State, 991 So. 2d 313, 332 (Ala. Crim. App. 2007).

Accordingly, Wilson is not due any relief on this claim.

### I.B. Penalty-Phase Claims

Wilson also argues that the circuit court erred when it summarily dismissed his "numerous subclaims" of ineffective assistance of counsel during the penalty phase of his trial. Wilson sets out the procedural history of the penalty phase, briefly explains the claims of penalty-phase ineffective assistance of counsel that he raised, and points out which claims the circuit court summarily dismissed. He then argues that the circuit court "did not follow this Court's direction on remand to carefully consider whether to hold a hearing in this case" (Wilson's brief, p. 66), "misapplied the pleading standards of Rule 32" (Wilson's brief, p. 68), and "improperly applied the Rule 32 pleading standards in dismissing [his] penalty phase ineffective assistance claims." (Wilson's brief, p. 69.) We address each of Wilson's arguments in turn.

## I.B.1.

Wilson first argues that the circuit court's judgment summarily dismissing his penalty-phase claims of ineffective assistance of counsel "is counter to this Court's remand instruction and based on an affidavit Mr. Wilson was never allowed to challenge." (Wilson's brief, p. 66.) This argument is without merit.

Initially, we question whether Wilson's claim is properly before this Court for appellate review. This argument is raised for the first time on appeal and is premised on Wilson's mistaken belief that in Wilson v. State, 911 So. 2d 40 (Ala. Crim. App. 2005), this Court instructed the circuit court to hold an evidentiary hearing on Wilson's claims of penalty-phase ineffective assistance of counsel, particularly his claim that his counsel failed to conduct any investigation into potential mitigation evidence. Indeed, Wilson argues on appeal that "this Court instructed [the circuit court] to consider and not dismiss summarily" his claims of penalty-phase ineffective assistance of counsel. (Wilson's brief, p. 67 (emphasis added).) Wilson is incorrect.

As explained above in our discussion of the facts and procedural history of this case, in Wilson, 911 So. 2d 40, this Court reversed the

circuit court's summary dismissal of Wilson's Rule 32 petition because it did not accept Wilson's amended petition, in violation of Ex parte Rhone, 900 So. 2d 455 (Ala. 2004). This Court, in its remand instructions, explained:

"On remand, the trial court is to conduct whatever proceedings are necessary to fully address the properly pleaded allegations in the petition, as amended. The State must be afforded the opportunity to answer the allegations in the petition, as amended. Because the State has put forth evidence in the form of trial counsel's affidavit, and because the trial court indicated in its order that it had relied on the State's answer when it summarily dismissed the petition, we urge the trial court to give careful consideration to holding an evidentiary hearing on the claims presenting factual disputes so that both parties are afforded the right to present evidence and to cross-examine any witnesses. See Ex parte MacEwan, 860 So. 2d 896, 897 (Ala. 2002) ('The summary dismissal of MacEwan's petition deprived her of an opportunity to cross-examine her trial counsel regarding the assertions he makes in the affidavit, the substance of which may have prompted the trial judge to dismiss the petition.').

"Of particular concern to this Court is Wilson's allegation that trial counsel failed to conduct any investigation into potential mitigation evidence and that his decisions regarding trial strategy in both the guilt and penalty phases were based on his inadequate investigation. If Wilson's allegations are true, Wilson might be entitled to relief on this claim. E.g., Wiggins v. Smith, 539 U.S. 510, 533, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) ('"strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." [Strickland v. Washington, 466 U.S. 668,] 690-91, 104 S. Ct. 2052, 80 L. Ed.

2d 674. A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." Id., at 691.'). See, also, Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (defense counsel rendered deficient performance and Williams was prejudiced when counsel failed to investigate and to present substantial mitigating evidence to the sentencing jury); Brownlee v. Haley, 306 F.3d 1043, 1074 (11th Cir. 2002) ('In this case, counsel's absolute failure to investigate, obtain, or present any evidence, let alone the powerful, concrete, and specific mitigating evidence that was available, prevented the jurors from hearing anything at all about the defendant before them. An individualized sentence, as required by the law, was therefore impossible.'). This Court recognizes, as it did in its opinion on direct appeal, that the evidence of Wilson's guilt was overwhelming. Wilson v. State, 777 So. 2d 856, 933 (Ala. Crim. App. 1999). That finding, however, does not preclude Wilson from presenting and receiving review of his postconviction claims in accordance with the mandates of Rule 32. At a minimum, Wilson is entitled to a thorough review of all of his properly pleaded claims, and he is entitled to an opportunity to prove the allegations of those claims that are not due to be summarily dismissed."

Wilson, 911 So. 2d at 47 (emphasis added).

In other words, this Court instructed the circuit court only to consider holding an evidentiary hearing; it did not mandate that the circuit court conduct such a hearing. Thus, Wilson's argument that the circuit court's failure to conduct an evidentiary hearing on his penalty-phase claims of ineffective assistance of counsel contravenes this Court's

remand instructions in <u>Wilson</u>, supra, is without merit, and, thus, he is not entitled to any relief on this claim.

Additionally, Wilson's argument that the circuit court improperly relied on his trial counsel's affidavit to dismiss his claim that his counsel failed to investigate mitigation evidence does not entitle him to any relief. In his brief on appeal, Wilson argues that he "made a serious claim (with numerous subclaims), both then and now, that trial counsel was ineffective for failing to investigate and present mitigating evidence." (Wilson's brief, p. 67.) Wilson further argues that the circuit court "rejected these claims, based <u>in part</u> on the Gladden affidavit. Yet, despite this Court's clear directive to keep in mind the parties' right to cross-examine the witnesses, the trial court failed to conduct a hearing upon remand, and instead, did nothing on the remand until after Gladden died and could not be questioned." (Wilson's brief, p. 67 (emphasis added).)

Although Wilson appears to argue in his brief that the circuit court dismissed multiple claims of penalty-phase ineffective assistance of counsel based on his trial counsel's affidavit, in his brief Wilson highlights only one specific claim that the circuit court dismissed based

on his counsel's affidavit -- i.e., a claim raised in his second amended petition. (See Wilson's brief, pp. 62-64.)

In his second amended petition, Wilson alleged that his counsel were ineffective. In so doing, Wilson noted that, "[a]t the request of the State," his trial counsel, Randall Gladden, executed an "affidavit concerning his representation" of Wilson. (Supp. C. 126.) Thereafter, Wilson quoted a portion of Gladden's affidavit, and then he alleged that Gladden's use of the term "excuse" when addressing mitigation

> "shows that he does not understand the concept of mitigation. Mitigation is never offered as an excuse or justification. It is offered as an explanation to the jury in terms of the context of the Defendant's life and maybe some of the factors that may have led the Defendant to have gotten into the situation of his criminal behavior and, in this case, that is alleged in the indictment. So, again, the fact that Mr. Gladden equates the mitigation with the excuse defense shows that he does not understand the concept of mitigation or probably has not understood or read Lockett v. Ohio and its progeny."

(Supp. C. 128.)

To the extent that Wilson's ad hominem argument about whether Gladden actually understood the concept of mitigation was a stand-alone claim of ineffective assistance of counsel, the circuit court disposed of Wilson's claim as follows:

> "Wilson alleges that Gladden was ineffective because he 'equate[d] mitigation with excuse.' Wilson uses this comment in Gladden's affidavit to infer that Gladden did not understand the concept of mitigation. However, Gladden's affidavit goes on to say that '[b]ased on the specific facts of this case, it just was not feasible to conduct a typical mitigation presentation of background, upbringing, and/or substance abuse issues.' Clearly, Gladden knew the type of evidence that can constitute potential mitigation evidence. This Court finds this claim to be without merit; it is therefore dismissed. Rue 32.7(d), Ala. R. Crim. P."

(C. 455.)

In other words, Wilson raised a claim of ineffective assistance of counsel based on language his counsel used in an affidavit, and the circuit court used that same affidavit to show that Wilson's assertion was not actually supported by the affidavit. Wilson cannot complain that the circuit court relied on his trial counsel's affidavit to refute his claim based on the same affidavit. But even if the circuit court improperly relied on his trial counsel's affidavit, Wilson would still not be entitled to any relief because his claim was insufficiently pleaded. Wilson's claim that his counsel did not understand mitigation when he used the word "excuse" to describe certain mitigating evidence does not set forth sufficient facts to show that his trial counsel did not actually understand the concept of mitigating evidence; nor did Wilson plead facts showing that he was

105

prejudiced by his counsel's alleged deficient performance. Thus, the circuit court did not err when it dismissed this claim.

Accordingly, Wilson is due no relief on this claim.

I.B.2.

Next, Wilson argues that the circuit court "misapplied the pleading standards of Rule 32." (Wilson's brief, p. 68.) The totality of Wilson's argument on appeal is as follows:

> "The trial court concluded that the claims were insufficiently pled or, occasionally, meritless. This conclusion contradicts Alabama law and misunderstands federal constitutional precedent governing ineffective assistance of counsel claims. As such, the trial court's summary dismissal must be vacated, with remand for a hearing on his claim that trial counsel were ineffective in the penalty phase.

> "As pointed out supra, the predicate for trial counsel's decision to be considered reasonable is thorough investigation. Clearly, that did not occur here. Trial counsel found no hospital, school, or other records that would give the jury a fuller picture of who Joey Wilson was. Further, trial counsel did not even ask the witnesses he presented to give the jury a real view of who Joey Wilson was, leaving the State to make Mr. Wilson out to be a heinous monster who needed to be removed from society through the death penalty. The prejudice from this is obvious: the jury voted unanimously for death. Had Mr. Wilson's trial counsel put on any of the evidence concerning his upbringing, there is a reasonable probability that some jurors would have voted differently."

(Wilson's brief, pp. 68-69.)

Wilson's argument does not satisfy Rule 28(a)(10), Ala. R. App. P., which requires that an argument contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Wilson cites no authority to support his contention that the circuit court erred when it summarily dismissed those claims mentioned in the above-quoted paragraphs. Although Wilson mentions in passing that the circuit court dismissed his claims as insufficiently pleaded or as being without merit, Wilson makes no argument detailing precisely how his claims were sufficiently pleaded or were meritorious. Consequently, Wilson's argument does not satisfy Rule 28(a)(10), and his argument that the circuit court erred when it summarily dismissed these claims is deemed waived.

### I.B.3.

Finally, Wilson argues that the circuit court "improperly applied the Rule 32 pleading standards in dismissing [his] penalty phase ineffective assistance claims." (Wilson's brief, p. 69.) Specifically, Wilson argues:

> "When all of Mr. Wilson's amended petitions are examined, his claim that defense counsel failed to investigate

107

and present available mitigation evidence was sufficiently pled. Mr. Wilson pleaded that defense counsel did not investigate or present evidence, including that Mr. Wilson:

> "a) was born jaundiced and with a collapsed lung and needed oxygen;
>
> "b) suffered from asthma and was on numerous medications early in life;
>
> "c) did fine in school, until he had to go to summer school after fifth grade, repeated sixth and seventh grades and, at that point, only passed physical education and band class, causing him to consider himself a 'dummy' and 'a failure,' and led to early experimentation and use of alcohol and drugs; and
>
> "d) heavily used drugs and alcohol at a young age and continued that pattern after he quit school and indeed, up to and including the day of the crime in this case. (Supp.R. 135-138.)

"Defense counsel found none of these facts because they did not do a proper mitigation investigation. The trial court's conclusion that trial counsel acted reasonably in not presenting this evidence puts the cart before the horse. Trial counsel's decisions can only be considered reasonable when they are based on adequate investigation. As detailed in the various Rule 32 petitions, there was no mitigation investigation.

"Mr. Wilson's Rule 32 petition adequately pled sufficient facts to require the trial court to hold a hearing on his claim that defense counsel was ineffective for failing to investigate and present mitigating evidence. This Court should vacate the trial court's order dismissing Mr. Wilson's penalty phase ineffective assistance claims and remand for a hearing."

(Wilson's brief, pp. 69-70.)  Wilson's argument is without merit.

In his second amended petition, Wilson alleged that his counsel were ineffective because "they did not conduct the 'typical mitigation presentation of background, upbringing, and/or substance abuse issues'" and, if they had done so, "they would have discovered numerous mitigating factors that neither the jury nor the trial court had the opportunity to consider."  (Supp. C. 133.)

The circuit court, noting that Wilson's trial counsel did not completely fail to conduct a mitigation investigation, summarily dismissed the above-quoted[9] claims as follows:

> "Citing Gladden's statement [in his affidavit] that he did not conduct 'the typical mitigation presentation of background, upbringing, and/or substance abuse issues,' Wilson asserts that if 'Gladden had conducted a typical mitigation investigation, they would have discovered numerous mitigating factors that neither the jury nor the trial court had the opportunity to consider.'  Wilson erroneously equates 'presentation' with 'investigation.'  The two are not

---

[9]In his petition, Wilson raised several other mitigating circumstances that, he alleged, his counsel failed to investigate, but he does not specifically raise those claims on appeal.  It is well settled that this Court will not address arguments that are not specifically listed and argued in the brief on appeal.  See Brownlee v. State, 666 So. 2d 91, 93 (Ala. Crim. App. 1995) ("We will not review issues not listed and argued in brief.").

synonymous. The record is clear on the 'presentation' Gladden made. At the penalty phase of trial before the jury, he called Wilson and his father to testify. At the sentencing hearing before Judge Fay, he called two additional witnesses to testify about their observations of and interactions with Wilson."

(C. 457.) As to Wilson's claim about jaundice, a collapsed lung, and asthma, the circuit court found that Wilson

"alleges that 'a pharmacological investigation' of his medication 'could' reveal properties that 'could' adversely affect the defendant. He does not specify what records or witnesses Gladden should have located to testify in this regard. He does not allege any facts that would establish a connection between these conditions and Wilson's conduct on the evening in question, i.e., no facts to show how these would have been considered 'mitigating' by the jury or by Judge Fay. He pleads no facts to establish a reasonable probability that the outcome would have been different had such evidence been presented. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R, Crim, P."

(C. 458-59.) As to Wilson's claim about his education and viewing himself as a "dummy" and a "failure," the circuit court found:

"Wilson alleges that Gladden was ineffective for failing to discover and explore evidence that Wilson considered himself a 'dummy' and a 'failure.' His petition fails to state why his opinion about himself based on a lack of academic achievement would have been mitigating, how he was prejudiced by failure of the jury and Judge Fay to consider this information. He pleads no facts to establish a reasonable probability that the outcome would have been different if it had been considered. Because this claim is insufficiently

110

pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R. Crim. P."

(C. 459.) Finally, as to Wilson's claim about his substance abuse at a young age and on the day of the crime, the circuit court found:

> "Wilson alleges that Gladden was ineffective for not discovering that he began drinking alcohol and using drugs at an early age and continued using them until the time of this crime. His petition fails to state what specific evidence or testimony Gladden could have, or should have, presented to prove he had a history of drug and alcohol abuse. Significantly, he fails to allege how he was prejudiced because this information was not presented to the jury or to Judge Fay, and fails to plead facts showing a reasonable probability that he outcome would have been different had it been presented. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b), Ala. R, Crim. P.
>
> "Wilson alleges that Gladden was ineffective for failing to discover that Wilson drank a large amount of alcohol and consumed a number of drugs on the day of the murders. He alleges that his consumption of these substances caused him to have a diminished capacity to appreciate the wrongfulness of his conduct. He does not allege what evidence Gladden could have, or should have, presented to the Jury or Judge Fay. He does not allege how he would have extrapolated the smell of alcohol on his breath to intoxication. He does not allege what expert could have been used to connect drinking alcohol and using drugs to lack of capacity to appreciate the wrongfulness of his conduct. Assuming he was intoxicated, he does not allege how he was prejudiced by not having evidence introduced, or plead facts to establish a reasonable probability that the outcome of his trial would have been different had such evidence been presented. Because this claim is insufficiently pleaded, it is dismissed pursuant to Rule 32.6(b) Ala. R. Crim. P."

111

(C. 460.) We agree with the circuit court's judgment.

Indeed, in each of the above-mentioned allegations of ineffective assistance of counsel, Wilson failed to plead sufficient facts to show that he was entitled to relief. As the circuit court noted, Wilson failed to allege what testimony he would have presented to establish these mitigating circumstances, he failed to allege whom his counsel should have called to testify about those alleged mitigating circumstances, and he failed to allege that these unnamed witnesses were willing and available to testify at his trial. Thus, the circuit court did not err when it found that Wilson's claims were insufficiently pleaded.

Accordingly, Wilson is due no relief on this claim.

## II. Brady Claim

Wilson argues that the circuit court erred when it dismissed his claim asserted pursuant to Brady v. Maryland, 373 U.S. 83 (1963), because, he says, the State "violated its constitutional obligations under Brady" when it "failed to provide a wealth of exculpatory evidence to [him]." (Wilson's brief, p. 45.)

In his petition, Wilson alleged that the "State failed to comply with its discovery obligations under Brady v. Maryland." (Supp. C. 57.)

112

Specifically, Wilson alleged that the State "failed to provide" the following "wealth of exculpatory evidence":

- "In a pre-trial hearing, the State disavowed any intention to provide the defense with the work product of their investigators (R. 42-44), investigative leads that identify new witnesses (R. 70), or a transcript of events before the grand jury (R. 22)."

- "Several written agreements and agreements were reached with potential witnesses which were not turned over by the prosecutors.  (R. 61-88.)"

- "The defense did not receive portions of Officer Michael Salmonsky's investigative report (R. 742-44), or complete accounts of evidence collected from state witnesses Khristian Abbey (R. 944), Brian Harris (R. 1398-1400), or Teresa Mills.  (R. 1417-18.)"

- "The state also provided late disclosure, and, in fact, attempted to conceal, the written agreement that it made with its informant Greg Tribble (R. 73) and its contact with Travis Hatfield.  (R. 83.)"

- "Information on other material witnesses and informants who had exculpatory information regarding Mr. Wilson's involvement was also not provided before trial."

- "Numerous other documents and critical items of exculpatory evidence were withheld by the state, which actively obstructed discovery."

(Supp. C. 58-59.)

113

In his second amended petition, Wilson added to his <u>Brady</u> claim, alleging that, although the trial court "ordered an open file policy," "the State over and over again violated its disclosure requirements before the trial started and even during the trial." (Supp. C. 147.) To support this allegation, Wilson quoted part of a pretrial hearing on October 23, 1997, during which the State revealed that Greg Tribble was a "paid informant for the FBI" and that law-enforcement officers wanted Tribble out of jail to continue serving as an informant. (Supp. C. 148.) According to the State at the hearing, Tribble shared a cell with Wilson and told the State that Wilson had admitted to committing the crimes. (Supp. C. 148.) Tribble agreed to work as a drug informant and to testify for the State against Wilson, and the State asked a judge to put Tribble on probation. (Supp. C. 148-49.) The State said that, before the trial court issued its discovery order in Wilson's case, Tribble did not fulfill his obligations as a drug informant and, thus, he was taken back to jail. According to Wilson, the State expressly asserted at a pretrial hearing that Tribble "will not be a witness" in Wilson's case. (Supp. C. 149.)

Wilson also alleged that, during that same hearing, his trial counsel accused the State of withholding information about a deal between the

114

State and Travis Hatfield for Hatfield's testimony against Wilson. (Supp. C. 156.) The State, however, explained that it had spoken with Hatfield, that Hatfield denied knowing anything about Wilson's case, and that Hatfield "will not be a witness" in Wilson's case. (Supp. C. 156.)

Wilson also added in his second amended petition a transcript of part of a pretrial hearing that occurred on October 24, 1997, during which Wilson's trial counsel told the trial court that the State had provided him with witness statements of two new witnesses -- namely, David Newby and Brian Harris. (Supp. C. 160.) At the hearing, the State said that they had taken Newby's and Harris's statements the day before, transcribed the statements, and then provided them to Wilson's counsel. (Supp. C. 161.) The State also told the trial court that it intended to call both Newby and Harris as witnesses in Wilson's trial. (Supp. C. 161.)

Next, Wilson added part of the reporter's transcript of his trial counsel's cross-examination of Officer Michael Salmonsky, in which Salmonsky testified that it appeared that the second page of his report was missing and that he had no recollection of what that page included. (Supp. C. 161-62.) Wilson also added parts of the reporter's transcripts from the testimonies of Khristian Ashby and Teresa Mills. (Supp. C. 162-

115

63.) During Ashby's testimony, Ashby testified that Wilson called her from the Madison County jail, and, when she was asked about that conversation, Wilson's trial counsel objected because he had not been provided with that information. The trial court sustained the objection and did not allow Ashby to testify about the conversation she had with Wilson. (Supp. C. 163.) During Mills's testimony, Mills testified that Wilson had come into her house and that she told him to "[g]et the hell out." (Supp. C. 164.) Wilson's trial counsel objected to Mills's testimony "under Ex parte Monk[, 557 So. 2d 832 (Ala. 1989),[10]] because this has never been disclosed to us," asked that Mills's testimony be stricken, and moved for a mistrial. (Supp. C. 164.) The trial court denied Wilson's

---

[10]In Ex parte Monk, 557 So. 2d 832 (Ala. 1989), the Alabama Supreme Court reversed this Court's judgment granting a petition for a writ of mandamus that challenged the circuit court's discovery orders in two capital-murder cases that required an "open file policy in regard to discovery," but maintained safeguards to protect the State's notes, memoranda, and any other confidential materials by requiring the State to present any documents withheld from the defendant to the court for an in camera inspection of the documents. The Alabama Supreme Court held that "capital cases are sufficiently different by their very nature, and that the discovery order ... in these two capital cases was within the discretionary authority of the trial court." Ex parte Monk, 557 So. 2d at 836.

116

motion for a mistrial, but it did instruct the jury to disregard Mills's "last statement." (Supp. C. 164.)

In its response to his <u>Brady</u> claim, the State argued that Wilson's claims about an alleged <u>Brady</u> violation that occurred at the pretrial hearing on October 23, 1997, was precluded under Rule 32.2(a)(2) and (4), Ala. R. Crim. P., because it was raised and addressed at trial and on appeal (C. 53); that Wilson's claims about an alleged <u>Brady</u> violation at the pretrial hearing on October 24, 1997, was precluded under Rule 32.2(a)(2) and (5), Ala. R. Crim. P., because it was raised and addressed at trial and could have been, but was not, raised on appeal (C. 53-54); that Wilson's <u>Brady</u> claim as to Officer Salmonsky's report was precluded under Rule 32.2(a)(3) and (4), Ala. R. Crim. P., because it could have been addressed at trial but was not, and because it was raised and addressed on appeal; that Wilson's <u>Brady</u> claim as to Ashby's statements was precluded under Rule 32.2(a)(3) and (5), Ala. R. Crim. P., because it could have been, but was not, raised at trial and on appeal; and that Wilson's <u>Brady</u> claim as to Mills's statement was precluded under Rule 32.2(a)(2) and (4), Ala. R. Crim. P., because it was raised and addressed at trial and on appeal. (C. 51-58.)

117

The circuit court summarily dismissed each of Wilson's claims that the State had violated <u>Brady</u>. (C. 392-99.)

On appeal, Wilson argues that the State violated <u>Brady</u> because it "failed to provide a wealth of exculpatory evidence to Mr. Wilson." (Wilson's brief, p. 45.) Specifically, Wilson argues that

> "[i]n a pre-trial hearing the State disavowed any intention of providing what it classified as the work product of its investigators (R. 42-44), leads identifying new witnesses (R. 70), or a transcript of events before the grand jury. (R. 22.) Several undisclosed written and verbal agreements were reached with potential witnesses. (R. 61-88.) The defense did not receive portions of Office Salmonsky's investigative report (R. 742-44), or complete accounts of evidence collected from state witnesses Khristian Ashby (R. 944), Brian Harris (R. 1398-1400), and Teresa Mills (R. 1417-18). The State also provided late disclosure of, and attempted to conceal, the written agreement it had made with Greg Tribble (R. 73) and contact with Travis Hatfield (R. 83). Information on the other material witnesses who had exculpatory information regarding Mr. Wilson's involvement in the crime was not provided before trial. Instead, the State actively obstructed discovery."

(Wilson's brief, pp. 45-46.) The circuit court correctly dismissed Wilson's <u>Brady</u> claims.

We have held:

> "'To [establish] a <u>Brady</u> violation, a defendant must show that "'(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence

118

was material to the issues at trial.'" Johnson v. State, 612 So. 2d 1288, 1293 (Ala. Cr. App. 1992), quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S. Ct. 932, 133 L. Ed. 2d 859 (1996). See Smith v. State, 675 So. 2d 100 (Ala. Cr. App. 1995). "'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Johnson, 612 So. 2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985).'

"Freeman v. State, 722 So. 2d 806, 810 (Ala. Crim. App. 1998). However, '"the rule of Brady applies only in situations which involve 'discovery after trial of information which had been known to the prosecution but unknown to the defense.'"' Bates v. State, 549 So. 2d 601, 609 (Ala. Crim. App. 1989) (quoting Gardner v. State, 530 So. 2d 250, 256 (Ala. Crim. App. 1987), quoting in turn United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)) (some emphasis added)."

Bryant v. State, 181 So. 3d 1087, 1133-34 (Ala. Crim. App. 2011).

Furthermore, this Court has held that Brady claims are nonjurisdictional and, thus, are subject to the grounds of preclusion set out in Rule 32.2, Ala. R. Crim. P. See, e.g., Barbour v. State, 903 So. 2d 858, 868 ("A Brady claim is subject to the procedural default grounds contained in Rule 32.2, Ala. R. Crim. P.").

119

Here, most of Wilson's allegations about the State's having violated Brady involved information that was made known to Wilson either before his trial, such as the "deals" with Tribble and Hatfield and the statements of Newby and Harris, or was made known to him during his trial, such as Officer Salmonsky's report and the statements from Ashby and Mills. So, as the State correctly argued in its response to these allegations, Wilson's claims are precluded under Rule 32.2(a)(2), (3), (4), or (5), Ala. R. Crim. P., because they either were raised and addressed at trial and on appeal or because they could have been, but were not, raised at trial and on appeal. Thus, the circuit court did not err when it summarily dismissed these claims. See, e.g., Bryant, 181 So. 3d at 1134 ("Based on Bryant's admission in his first amended petition that his counsel were aware of the two used condoms at the time of trial, and that counsel even requested discovery of those condoms, it is clear that Bryant's Brady claim was precluded by Rules 32.2(a)(3) and (a)(5) because it could have been, but was not, raised and addressed at trial and on appeal.").

As to Wilson's other Brady claims (i.e., that "[i]nformation on other material witnesses and informants who had exculpatory information regarding Mr. Wilson's involvement was also not provided before trial"

and that "[n]umerous other documents and critical items of exculpatory evidence were withheld by the state, which actively obstructed discovery"), those claims were insufficiently pleaded.

Indeed, as to the "other material witnesses and informants," Wilson did not identify by name any witness (other than the ones the State did disclose as noted above) whom the State did not disclose to him. Nor did Wilson plead any facts showing what exculpatory and material evidence that these unnamed, undisclosed witnesses possessed. And, as the circuit court correctly found:

> "Wilson conclude[d] his <u>Brady</u> claim by alleging that 'numerous other documents and critical items of exculpatory evidence were withheld by the state, which actively obstructed discovery.' This claim is dismissed because it is not specifically pleaded. Wilson has not alleged facts showing that the information referred to is exculpatory or material. Not one piece of allegedly suppressed evidence is described with requisite specificity."

(C. 398-99.) Wilson's bare allegations that the State violated <u>Brady</u> do not satisfy the full-fact pleading requirement of Rule 32.3 and 32.6(b), Ala. R. Crim. P. Thus, the circuit court did not err when it summarily dismissed these claims.

Accordingly, Wilson is due no relief on his <u>Brady</u> claim.

### III. State's Comment on Wilson's post-Miranda Silence

Wilson argues that the circuit court erred when it summarily dismissed his claim that "the State commented repeatedly on [his] exercise of his right to remain silent." (Wilson's brief, p. 47.) In his initial petition, Wilson alleged that,

> "[f]rom the very outset of the trial, through the evidentiary phase, and then at closing argument, the state impressed upon the jury that Mr. Wilson did not a) give a statement to the police and b) did not testify at the guilt phase of the trial. The first reference came during the state's opening argument. (R. 631.) Once the evidentiary phase of the trial began, the state deliberately elicited testimony about Mr. Wilson's decision to not give a statement to the police, from two separate police witnesses. (R. 912, 915-916.) Describing and stressing Mr. Wilson's invocation of this Sixth Amendment right to counsel was grossly improper and prejudicial to Mr. Wilson."

(Supp. C. 71-72.) Wilson's claim, however, is nonjurisdictional and, thus, is subject to the grounds of preclusion set out in Rule 32.2, Ala. R. Crim. P. See, e.g., Marshall v. State, 182 So. 3d 573, 621 (Ala. Crim. App. 2014) (holding that claims that a prosecutor made an improper argument or engaged in misconduct are nonjurisdictional claims that are subject to the grounds of preclusion set out in Rule 32.2). Because this Court in Wilson's direct appeal rejected Wilson's argument that the State improperly commented on his right to remain silent, the circuit court

correctly found that Wilson's claim is precluded under Rule 32.2(a)(4), Ala. R. Crim. P., because it was raised and addressed by this Court in Wilson's direct appeal.

Additionally, Wilson's allegation that the State improperly commented on the exercise of his right to remain silent during its opening statement and during its presentation of evidence through two law-enforcement witnesses ignores that this Court has already examined the complained-of comments and testimony and rejected the notion that there exists any evidence indicating that Wilson ever invoked his right to remain silent and held that the State's describing Wilson's statement to someone in jail as "testimony" was, at most, a misstatement by the State that could not have reasonably interpreted as a comment on Wilson's failure to testify. Specifically, this Court held:

> "From our review of the record, we conclude that the prosecutor did not violate Doyle [ v. Ohio, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)]. There is no indication in the record that the appellant ever invoked his right to remain silent during questioning by law enforcement officers. See Hardy v. State, 804 So. 2d 247 (Ala. Cr. App. 1999). Rather, the testimony indicates that he waived his right to remain silent and agreed to talk to the officers. The comments and testimony about which the appellant complains are not improper references to his post-Miranda silence. Rather, they are references to his waiver of his right to remain silent and the statements he made after that waiver….

123

"The appellant also claims that the prosecutor improperly drew the jury's attention to the fact that he would not testify at trial. Specifically, he argues that the prosecutor improperly characterized comments he made to a cell mate as 'what he <u>testified</u> to about a year ago in jail.' (Appellant's brief at p. 49) (emphasis added). However, this was clearly simply a misstatement by the prosecutor. There is no indication that a reasonable juror would have interpreted the statement to be a comment on the appellant's decision not to testify at trial. Therefore, the appellant's argument is without merit."

<u>Wilson</u>, 777 So. 2d at 889-90. Wilson's allegation in his Rule 32 petition characterizing the same comments and testimony as comments on his right to remain silent is without merit.

In short, the circuit court did not err when it dismissed Wilson's claim because it is precluded under Rule 32.2(a)(4), Ala. R. Crim. P., and because it is without merit.

Accordingly, Wilson is due no relief on this claim.

### IV. Prosecutorial Misconduct

Finally, Wilson argues that the circuit court erred when it summarily dismissed his claim that his "trial was infected at every stage by unobjected-to prosecutorial misconduct." (Wilson's brief, p. 49.) But "[i]t is well settled that claims of prosecutorial misconduct are nonjurisdictional and subject to the grounds of preclusion set forth in

124

Rule 32.2, Ala. R. Crim. P. <u>See</u> <u>Sunday v. State</u>, 857 So. 2d 166, 169 (Ala. Crim. App. 2002) ('[Sunday's prosecutorial-misconduct claim] is precluded because it could have been, but was not, raised at trial or on appeal.')." <u>Marshall</u>, 182 So. 3d at 621. Because these claims were raised and addressed in Wilson's direct appeal, <u>see</u> <u>Wilson</u>, 777 So. 2d at 893-910, the circuit court did not err when it found that Wilson's prosecutorial-misconduct claims were precluded under Rule 32.2(a)(4), Ala. R. Crim. P.

Accordingly, Wilson is due no relief on this claim.

Conclusion

Based on these reasons, the judgment of the circuit court is affirmed.

APPLICATION OVERRULED; OPINION OF JUNE 28, 2024, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.

Windom, P.J., and Minor, J., concur. Kellum, J., concurs in the result. Anderson, J., recuses himself.